UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035 CAS (VBKx) | Date | November 12, 2010 |
|---|---|---|---|
| Title | RAYMOND CALUORI V. ONE WORLD TECHNOLOGIES, INC. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| VALENCIA VALLERY | LAURA ELIAS | | N/A |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Brian Dingman | J. Donald Best |
| | Melanie Reichenberger |
| | Richard Marschall |

**Proceedings:** CLAIM CONSTRUCTION

## I. INTRODUCTION

This claim construction opinion construes the disputed terms in U.S. Patent No. 6,915,727 ("the '727 patent"). In this action, plaintiff Raymond Caluori accuses defendant One World Technologies of infringing independent claims 1, 17, and 34, as well as dependent claims 2-3, 5-8, 11-16, 18, 20-22, 24-31, 35, and 37-50 of the '727 patent. The parties originally submitted thirteen terms for construction, one of which has subsequently been agreed to between the parties. On September 16, 2010, plaintiff filed an Opening Claim Construction Brief ("Pl.'s Opening") and defendant filed an Opening Claim Construction Brief ("Def.'s Opening"). On October 18, 2010, plaintiff filed a Rebuttal Brief ("Pl.'s Rebuttal") and defendant filed a Rebuttal Brief ("Def.'s Rebuttal"). On November 5, 2010, plaintiff filed a reply to defendant's rebuttal. On November 9, 2010, defendant filed a response to plaintiff's reply as well as a motion to strike the reply. A Markman hearing was held on November 12, 2010. Defendant's motion to strike plaintiff's reply was denied from the bench because plaintiff's reply ultimately did not change the Court's claim construction. For the reasons stated herein, the Court adopts the construction set forth below.

## II. OVERVIEW OF THE PATENT

Plaintiff owns a patent entitled "Angled Light Beam Rotary Saw Cut Alignment Device" that describes and claims a device that uses a battery powered light source to project light onto an object to be cut by a rotary saw in order to align the cut of the saw.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035 CAS (VBKx) | Date | November 12, 2010 |
|---|---|---|---|
| Title | RAYMOND CALUORI V. ONE WORLD TECHNOLOGIES, INC. | | |

This patent issued July 12, 2005 on an application filed July 29, 2002, claiming priority to a provisional application filed July 31, 2001. The '727 patent contains 52 claims, many of which are asserted in this action.

The patent notes that laser-based cut alignment devices are known in the prior art, but suffer from the deficiency of requiring the operator to manually align the device prior to cutting. '727 patent, col. 1, ll. 21-28. The patent describes a device that is mounted on the arbor of a rotary saw such that a light beam generated by a laser diode inside the device is displayed on the material to be cut by the saw.

The patent describes the preferred embodiments' construction in detail. The device includes a housing to provide the overall structural integrity of the device. Id. at col. 3, ll. 38-39. A cross-shaped portion within the housing creates pockets within which batteries and the light source may be placed. Id. at col. 3, ll. 39-45. The cross-shaped portion protects the components in the pockets from being crushed when the device is placed on the arbor, and the washer cover is tightened down to the device and the cross-shaped portion allows the device to be mass-balanced around the center of the device making it rotationally balanced. Id. at col. 3, ll. 39-48.

The laser diode has its own housing and includes a lens. Id. at col. 3, ll. 60-62. The laser diode beam must be angled toward the plane of the saw blade rather than parallel to it, so that the beam intersects the plane of the blade surface at a desired location. Id. at col. 3-4, ll. 66-67, 1-4. The final positioning of the laser diode is accomplished by the use of an adjustment screw that is placed through a hole in the laser diode housing. Id. at col. 4, ll. 5-8. A portion of the laser diode housing is somewhat flexible to allow the angle of the lens to change relative to the device housing. Id. at col. 4, ll. 8-11. Preferred dimensions for placement of the laser diode are provided, and the embodiments disclosed in the patent use a heat conductive epoxy to attach the laser diode to the device housing to allow the device housing to act as a heat sink for the laser diode. Id. at col. 4, ll. 11-25.

The patent includes three independent claims, all of which are asserted in the instant action. Each independent claim starts the same, and states:

> A cut alignment device for a rotary saw having a motor which spins a cutting unit, the cutting unit including a rotary shaft driven by the motor, a circular

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035 CAS (VBKx) | Date | November 12, 2010 |
|---|---|---|---|
| Title | RAYMOND CALUORI V. ONE WORLD TECHNOLOGIES, INC. | | |

> blade having a central aperture though which the shaft fits, and a blade mounting device for holding the blade on the shaft, in which the blade-mounting device comprises a structural housing that is held on the shaft against the blade, and wherein a light source is located within the structural housing, the cut alignment device comprising:
>
> a battery power source carried within the structural housing;
>
> the light source, operatively connected to the power source, and carried within the structural housing wherein the light source projects a light beam from the structural housing directed toward the plane of the blade, to assist in cutting accurately; and

Id. at col. 5, ll. 8-23. Each independent claim then ends with a different limitation. Claim 1 concludes with:

> wherein the structural housing is essentially a partially hollow cylinder with a raised inner central portion and at least two spaced raised support arms radiating from the central portion, the support arms thereby defining two or more pockets in which the battery power source and the light source are located.

Id. at col. 5, ll. 24-29. Claim 17 concludes with:

> a hardened material that mechanically couples the light source to the structural housing, in which the hardened material is heat conductive, to conduct heat from the light source to the structural housing.

Id. at col. 6, ll. 28-31. Claim 34 concludes with:

> a somewhat flexible housing located within the structural housing and to which the light source is coupled, and at least one adjustment device received in the flexible housing, wherein movement of said at least one adjustment device relative to the flexible housing alters the spacing between the flexible housing and the structural housing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035 CAS (VBKx) | Date | November 12, 2010 |
|---|---|---|---|
| Title | RAYMOND CALUORI V. ONE WORLD TECHNOLOGIES, INC. | | |

Id. at col. 7, ll. 37-43.

### III. LEGAL STANDARD

Claim construction begins with an examination of the intrinsic evidence of record, which includes the patent claims,[1] the specification,[2] and, if in evidence, the prosecution

---

[1] The first source courts turn to in order to define the scope of the invention is "the words of the claims themselves, both asserted and nonasserted." Vitronics, 90 F.3d at 1582. In fact, often, "the most important indicator of meaning" of a disputed claim term "is its usage and context, within the claim itself." Middleton, Inc. v. Minn. Mining & Mfg. Co., 311 F.3d 1384, 1387 (Fed. Cir. 2002). Additionally, claim language cannot be interpreted differently in different claims because claim terms must be interpreted consistently. Southwall Technologies, Inc. v. Cardinal IG Co., 54 F.3d 1570, 1579 (Fed. Cir. 1995).

[2] "When the claim language itself lacks sufficient clarity to ascertain the scope of the claims," the court should turn to the specification. Deering Precision Instruments, LLC v. Vector Distrib. Sys., 347 F.3d 1314, 1322 (Fed. Cir. 2003). Review of the specification is always an important part of claim construction. Phillips v. AWH Corp., 415 F.3d 1303, 1315-17 (Fed. Cir. 2005) (en banc); see also Vitronics, 90 F.3d at 1582 ("[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."); Renishaw PLC v. Marposs Societa Per Azioni, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." (citations omitted)). However, "[a]lthough claims must be read in light of the specification of which they are a part, it is improper to read limitations from the written description into a claim." Tate Access Floors, Inc. v. Maxcess Techs., Inc. 222 F.3d 958, 966 (Fed. Cir. 2000) (citations omitted); see also Kraft Foods, Inc. v. Int'l Trading Co., 203 F.3d 1362, 1366 (Fed. Cir. 2000) ("Although the written description may aid in the proper construction of a claim term, limitations, examples, or embodiments appearing only there may not be read into the claim.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035 CAS (VBKx) | Date | November 12, 2010 |
|---|---|---|---|
| Title | RAYMOND CALUORI V. ONE WORLD TECHNOLOGIES, INC. | | |

history[3] and prior art.[4] Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582, 1584 (Fed. Cir. 1996); Phillips v. AWH Corp., 415 F.3d 1303, 1316-17 (Fed. Cir. 2005) (en banc); V-Formation, Inc. v. Benetton Group SpA, 401 F.3d 1307, 1310-12 (Fed. Cir. 2005). Courts also may use extrinsic evidence, for example dictionaries, treatises, and expert or inventor testimony, to resolve ambiguities in the disputed claim terms, but only if the intrinsic evidence does not resolve the ambiguities.[5] Vitronics, 90 F.3d at 1584; Phillips, 415 F.3d at 1317-18. Further, technically extrinsic evidence, such as dictionaries, encyclopedias, and technical treatises, may be consulted at any time to help determine the meaning of claim terms.[6] Vitronics, 90 F.3d at 1584 n.6. However, all

---

[3] The prosecution history "contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims [and] is often of critical significance in determining the meaning of the claims." Vitronics, 90 F.3d at 1582. In particular, "[t]he prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." Southwall, 54 F.3d at 1576.

[4] In construing asserted claims, courts may consider "prior art proffered by one of the parties, whether or not cited in the specification or the file history[,] . . . to demonstrate how a disputed term is used by those skilled in the art." Vitronics, 90 F.3d at 1584; see also In re Cortright, 165 F.3d 1353, 1358 ("Prior art references may be 'indicative of what all those skilled in the art generally believe a certain claim term means . . . .'" (quoting Vitronics, 90 F.3d at 1584)).

[5] "The sequence of steps used by the judge in consulting various sources is not important; what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." Phillips, 415 F.3d at 1324.

[6] However, in Phillips, the Federal Circuit cautioned that "heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." Phillips, 415 F.3d at 1321 (holding that a court should not start with a dictionary to determine the plain meaning of a term, and only then turn to the specification in order to determine whether to narrow that meaning in light of the intrinsic evidence).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA       O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035 CAS (VBKx) | Date | November 12, 2010 |
|---|---|---|---|
| Title | RAYMOND CALUORI V. ONE WORLD TECHNOLOGIES, INC. | | |

forms of extrinsic evidence are less significant to the meaning of disputed terms. Phillips, 415 F.3d at 1317-19. All such evidence – both intrinsic and extrinsic – should be viewed from the perspective of a person of ordinary skill in the relevant art. Markman v. Westview Instruments Inc., 52 F.3d 967, 979-80 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996).

      Generally, courts begin with a "heavy presumption" that "the terms in the claim are to be given their ordinary and accustomed meaning." Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 989 (Fed. Cir. 1999); see also Gart v. Logitech, Inc., 254 F.3d 1334, 1341 (Fed. Cir. 2001). This ordinary and customary meaning is the meaning a claim term "would have to a person of ordinary skill in the art at the time of the invention." Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1116 (Fed. Cir. 2004). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Phillips, 415 F.3d at 1314.

      "An accused infringer may overcome this 'heavy presumption' and narrow a claim term's ordinary meaning, but he cannot do so simply by pointing to the preferred embodiment or other structures or steps disclosed in the specification or prosecution history." CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002) (quoting Johnson Worldwide, 175 F.3d at 989-90); see JVW Enterprises, Inc. v. Interact Accessories, Inc., 424 F.3d 1324, 1335 (Fed. Cir. 2005) ("We do not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment, unless the specification makes clear that 'the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive.'" (quoting Phillips, 415 F.3d at 1323)). Rather, "a court may constrict the meaning of a claim term in at least one of four ways." CCS Fitness, 288 F.3d at 1366. First, the claim term will not be given its ordinary meaning "if the patentee has chosen to be his or her own lexicographer by clearly setting forth an explicit definition for a claim term." Johnson Worldwide, 175 F.3d at 990; see also Texas Digital Systems, Inc. v. Telegenix, Inc., 308 F.3d 1193, 1204 (Fed. Cir. 2002) ("Indeed, the intrinsic record may show that the specification uses the words in a manner clearly inconsistent with the ordinary meaning reflected, for example, in a dictionary definition. In such a case, the inconsistent dictionary definition must be rejected.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035 CAS (VBKx) | Date | November 12, 2010 |
|---|---|---|---|
| Title | RAYMOND CALUORI V. ONE WORLD TECHNOLOGIES, INC. | | |

Second, a claim term will not have its ordinary meaning "if the intrinsic evidence shows that the patentee distinguished that term from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention." CCS Fitness, 288 F.3d at 1366-67; see, e.g., Spectrum Int'l, Inc. v. Sterilite Corp., 164 F.3d 1372, 1378 (Fed. Cir. 1998); SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1343-44 (Fed. Cir. 2001); Toro Co. v. White Consol. Indus., Inc., 199 F.3d 1295, 1301 (Fed. Cir. 1999). Third, a claim term will not receive its ordinary meaning "if the term 'chosen by the patentee so deprive[s] the claim of clarity' as to require resort to the other intrinsic evidence for a definite meaning." CCS Fitness, 288 F.3d at 1367 (quoting Johnson Worldwide, 175 F.3d at 990). Fourth, if a claim is phrased in step- or means-plus-function format, a claim term does not cover more than the corresponding structure or step disclosed in the specification, and the equivalents thereto. 35 U.S.C. § 112 ¶ 6; CCS Fitness, 28 F.3d at 1367. With regard to the specification and the prosecution history, if the plain language of the claim is to be narrowed, any disclaimer of a broader construction must be "clear and unmistakable." Cordis Corp. v. Boston Scientific Corp., 561 F.3d 1319, 1329 (Fed. Cir. 2009); Home Diagnostics, Inc. v. Lifescan, Inc., 381 F.3d 1352, 1358 (Fed. Cir. 2004).

Thus, although courts may look to intrinsic and extrinsic evidence, courts "perform this consultation" to determine whether any of the reasons for abandoning the ordinary meaning are applicable. Gart, 254 F.3d at 1341. In the absence of one or more of the circumstances set forth above, courts must follow the general rule that claim terms are to be given their ordinary meaning. Id.; Inverness Med. Switz. GmbH v. Princeton Biomeditech Corp., 309 F.3d 1365, 1370-73 (Fed. Cir. 2002) (holding that nothing in the patent's claim language, specification, or prosecution history contradicted or altered the plain meaning of the unambiguous claim term "mobility" and thus it was error for the district court to construe the claim term at issue not in accordance with its plain meaning).

## IV. DISCUSSION

### A. "structural housing"

Plaintiff asserts that this term should be construed as "a case that protects one or more components." Plaintiff asserts that this construction is based on the ordinary and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035 CAS (VBKx) | Date | November 12, 2010 |
|---|---|---|---|
| Title | RAYMOND CALUORI V. ONE WORLD TECHNOLOGIES, INC. | | |

customary meaning of the words and is supported both by the dictionary definitions of the words independently as well as the specification. Plaintiff points to language in the specification that indicates that the "stainless steel housing" "protects the electronic components." Pl.'s Opening 5. Plaintiff argues that defendant's construction improperly limits the term to the embodiments shown in the specification. Pl.'s Rebuttal 2.

Defendant asserts that this term should be construed as "a structural enclosure distinct from the cover for the assembly." Defendant points to the specification as indicating that there is "a stainless steel housing" and a separate washer that "is the cover for the assembly." Def.'s Opening 5. Defendant argues that plaintiff is improperly broadening the claim term beyond what is disclosed in the specification by not pointing out the distinction between the housing and the cover for the housing. Id. at 6. Defendant asserts that this is reinforced by the language of the claims, which require "a structural housing that is held on the shaft against the blade." Id. Defendant asserts that "the cover cannot be against the blade." Id. Defendant further notes that the specification states that "[d]evice 10 includes stainless steel housing 12 that provides the structural integrity for the device," and "[t]he raised central cross-shaped portion 13 protects the electronic components." '727 patent, col. 3, ll. 38-41. Defendant concludes that the housing is not protecting the components, but rather, the central cross-shaped portion is. Def.'s Rebuttal 10.

Because claim 1 itself continues on to describe the central cross-shaped portion, when read in light of the specification language, the term structural housing cannot be construed to protect the components, as that is the function of the cross-shaped portion. Thus, plaintiff's construction, which includes the word "protects," cannot be adopted verbatim. However, there is nothing in the language of the claims that suggests that the structural housing must be separate and distinct from a cover. Defendant points to the examiner's understanding of an early version of the claims, Id. at 11, but the subsequent amendment does not amount to a clear disavowal of a claim construction that includes the cover as part of the structural housing. See Reichenberger Decl., Ex. 22, 186. The claims do not define the blade-mounting device as separate from the structural housing, but rather state that "the blade-mounting device comprises a structural housing that is held on the shaft against the blade." '727 patent, col. 5, ll. 12-14. Thus, defendant's interpretation is also without merit.

Thus, the Court interprets "structural housing" to mean "a case that encloses one or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035 CAS (VBKx) | Date | November 12, 2010 |
|---|---|---|---|
| Title | RAYMOND CALUORI V. ONE WORLD TECHNOLOGIES, INC. | | |

more components." This construction is consistent with the language of the claims, as well as the specification, but refrains from improperly importing limitations from the specification into the claims. Because both claims 17 and 34 use the phrase in the same manner, and because both claims 17 and 34 have dependent claims 30 and 47 respectively that describe the central cross-shaped portion, and because claims must be construed consistently, this construction is appropriate for each claim in which the term is used.

    **B.**     **"partially hollow cylinder"**

Plaintiff asserts that this term requires no construction, stating that "[t]he term has an ordinary and customary meaning to one of skill in the art without reference to intrinsic or extrinsic evidence, and there is no evidence of intent by the inventor to impart a novel or special meaning to the term." Pl.'s Opening 6. Plaintiff cites U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997) for the proposition that courts are not required to construe every disputed term unless necessary.

Defendant asserts that the term should be construed to mean a "cylinder having walls that define a cavity." Defendant argues that because the support arms inside the cylinder must create pockets, such a construction is necessary. Def.'s Opening 7. Defendant argues further that plaintiff misstates the holding of U.S. Surgical. Defendant cites Sulzer Textil A.G. v. Picanol N.V., 358 F.3d 1356, 1367 (Fed. Cir. 2004) and O2 Micro Int'l Ltd. v. Beyond Innovation Technologies Co., 521 F.3d 1351, 1362 (Fed. Cir. 2008), arguing that these cases require a court to select a claim construction of one party when the other party has offered no construction.

While defendant is correct that U.S. Surgical does not stand for what plaintiff suggests, defendant is wrong that the two cases cited by defendant require the Court to select defendant's claim construction in the absence of another offered by plaintiff. The discussion in Sulzer indicates that U.S. Surgical involved a situation where claim terms were not disputed at any time during the trial. See Sulzer, 358 F.3d at 1367. And while O2 Micro does indicate that a court must resolve a dispute on the meaning of a claim term, O2 Micro equally indicates that a plain meaning interpretation of a claim term is sufficient as long as there are no other plain meanings of the term, and the plain meaning construction sufficiently resolves the parties' dispute. O2 Micro, 521 F.3d at 1361-62. District courts may default to a plain meaning construction in the face of another party's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035 CAS (VBKx) | Date | November 12, 2010 |
|---|---|---|---|
| Title | RAYMOND CALUORI V. ONE WORLD TECHNOLOGIES, INC. | | |

construction. See, e.g., Emsat Advanced Geo-Location Tech., LLC v. Metropcs Commc'ns., Inc., No. 2:08-CV-381-DF-CE, 2010 WL 2573075, at *6 (E.D. Tex. June 23, 2010); see also AztraZeneca AB v. Dr. Reddy's Labs., Ltd., No. 05-5553 (JAP), 2010 WL 1981790, at *19-20 (D.N.J. May 18, 2010) (rejecting plaintiff's construction as unsupported, and assigning the ordinary meaning of the term).

Thus, the court construes the term to have its ordinary and customary meaning of "partially hollow cylinder." Nothing in the specification requires a construction that adds the limitations of "walls" and a "cavity." Defendant's reliance on the drawings is misplaced, since claims should not be restricted to the embodiments shown in the specification. Additionally, the rest of the claim further describes the structure of the cylinder, and includes terms that are construed by the Court below.

    C.    "raised support arms"

Plaintiff asserts that this term should be construed to mean "projections that extend above the inner bottom surface of the structural housing and that maintain the integrity of the housing so that it doesn't bend and change the adjustment of the laser beam when in use." Plaintiff relies on dictionary definitions and language from the specification that tracks this language. Pl.'s Opening 8. Plaintiff argues that defendant's reliance on the protection function of the raised support arms is incorrect because it is the structural housing as a whole, which includes the raised support arms, that protects the internal components. Id. at 8-9. Plaintiff also argues that defendant's addition of "sufficient strength and height" unnecessarily adds limitations to the claim terms. Id. at 8.

Defendant asserts that this term should be construed to mean "support arms of sufficient strength and height to maintain the integrity of the housing and to protect the components in the housing so that they are not crushed when the device is placed on an arbor and the nut is tightened down." Defendant's construction also tracks language directly from the specification. Def.'s Opening 8. Defendant also points to the prosecution history in which the examiner noted that these structures of the cylinder, including the raised support arms, were a point of novelty not existing in the prior art. Def.'s Rebuttal 15; Reichenberger Decl., Ex. 22, 259.

The Court finds that both parties' arguments have some merit. In construing the term "structural housing" above, the Court found that the specification specifically

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035 CAS (VBKx) | Date | November 12, 2010 |
|---|---|---|---|
| Title | RAYMOND CALUORI V. ONE WORLD TECHNOLOGIES, INC. | | |

assigns the protection function of the housing to the support arms claim limitation, and thus, plaintiff's attack on defendant's construction regarding the protection function has no force after the Court's construction of structural housing. It is also clear from the prosecution history that the prior art of record did not include the specific structural elements of a partially hollow cylinder with raised support arms that define pockets, and that these elements were significant to the patentability of the claim. Reichenberger Decl., Ex. 22, 258-59. At the same time, defendant's construction adds limitations and uses the word "sufficient," which creates its own ambiguity. Thus, the Court construes this term to mean "projections that extend above the inner bottom surface of the structural housing and that maintain the integrity of the housing and protect the components in the housing so that they are not crushed when the device is secured on an arbor." This construction imparts the dual purpose of the raised support arms contemplated by the specification, determined to be a point of novelty by the examiner, and is required by the separation of the limitations in the claim language itself. This construction also avoids adding unnecessary limitations to the claim.

### D. "pockets"

Plaintiff asserts that this term should be construed to mean "receptacles." Plaintiff points to the dictionary definition of the word, as well as the specification that indicates that the electronic components are located in the pockets. Pl.'s Opening 9. Plaintiff also indicates that defendant's construction is redundant because the claim language already includes a number of the terms defendant seeks to include in this construction. Id. at 10.

Defendant asserts that this term should be construed to mean "compartments surrounding the batteries and the light source that are defined and protected by the raised support arms." Defendant refers to the claim language and the specification for this construction. Def.'s Opening 10.

The limitation in claim 1 reads: "the support arms thereby defining two or more pockets in which the battery power source and the light source are located." '727 patent, col. 5, ll. 27-29. Defendant's construction is redundant in that it assigns the protection function to the pockets, which has already been construed as part of the raised support arms' function, as well as because the rest of the claim language already indicates that the pockets are defined by the support arms. However, the Court agrees that the word compartment better defines the pockets when compared to the word receptacle. While

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035 CAS (VBKx) | Date | November 12, 2010 |
|---|---|---|---|
| Title | RAYMOND CALUORI V. ONE WORLD TECHNOLOGIES, INC. | | |

"receptacle" may be the dictionary definition offered by plaintiff, when read in light of the specification, the pockets do not receive or contain something, but rather are separate divisions or sections defined by the raised support arms. Thus, the Court construes this term to mean "compartments."

### E. "hardened material"

Plaintiff asserts that this term should be construed to mean "a substance that becomes hard or harder." Plaintiff relies primarily on the dictionary definition of the word "hardened" for this construction. Pl.'s Opening 10-11. Plaintiff argues that defendant's construction improperly adds limitations to the claim. Id. at 11.

Defendant asserts that this term should be construed to mean "material that is relatively soft and malleable during assembly and later hardened to fix items in place, such as an epoxy." Defendant argues that this construction is contemplated by the specification, which describes embodiments that include the use of epoxy, glue, or adhesive. Def's. Opening 11. Defendant is also concerned with ensuring that the construction given to hardened material does not read on the prior art of record in the prosecution history, as one prior art reference holds the laser in place with a piece of metal, which defendant contends should not be within the definition of "hardened material." Def.'s Rebuttal 19.

The Court is mindful of the cases cited by defendant that indicate when it is not improper to use the preferred embodiments to shed light on the meaning of a disputed term. Id. However, none is directly on point with the situation presented here. The summary of cases in SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc., 242 F.3d 1337, 1341-45 (Fed. Cir. 2001), is most instructive. The Federal Circuit in SciMed describes cases in which the court found it proper to limit claim language by the embodiments in the specification. Id. In each case described therein, the limitation was imported from the specification because the narrower interpretation was specifically linked to the entire invention itself in the specification language, as opposed to individual embodiments. See id. As there is no language in the specification that suggests that the invention is to be used only with a material that is soft and malleable and later hardened, as suggested by defendant's construction of the term, this limitation cannot be brought into the claims. Thus, the court construes this term to mean "a substance that becomes hard or harder."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035 CAS (VBKx) | Date | November 12, 2010 |
|---|---|---|---|
| Title | RAYMOND CALUORI V. ONE WORLD TECHNOLOGIES, INC. | | |

  **F.**  **"mechanically couples the light source to the structural housing"**

  Plaintiff asserts that this term should be construed to mean "physically fastens the light source to the structural housing." Plaintiff relies on the dictionary definitions of "mechanical" and "couple" for this interpretation. Pl.'s Opening 12. Plaintiff further argues that defendant's use of "directly" improperly adds a limitation that does not exist in the claims, specification, or prosecution history. Id. at 12-13.

  Defendant asserts that this term should be construed to mean "directly joins the light source to the structural housing." Defendant argues that the specification suggests that the light source is connected to the structural housing in a direct manner. Def.'s Opening 12. Specifically, defendant points to the embodiments in the specification and argues that the specification does not contemplate any intervening structures between the light source and the housing. Def.'s Rebuttal 25. Defendant also argues that "joins" is a better word than "fastens" because "fastens" implies some sort of pinning, tying, or nailing is used. Def.'s Opening 12.

  The Court agrees that "joins" is a more suitable word in this instance than "fastens" for the reasons indicated by defendant. The relevant portion of claim 17 reads "a hardened material that mechanically couples the light source <u>to the structural housing</u>." '727 patent, col. 6, ll. 28-29 (emphasis added). As indicated above, the structural housing has been construed to mean "a case that encloses one or more components," and is separate and distinct from components and structures within the housing. Additionally, the examiner's notice of allowance indicates that a point of novelty for the claims was the ability for the hardened material "to conduct heat from the light source <u>to the structural housing</u>," as opposed to some other structure. Reichenberger Decl., Ex. 22, 259 (emphasis added). While an applicant's silence with regard to an examiner's unilateral statements cannot serve as evidence of a disavowal of claim scope, <u>Salazar v. Procter & Gamble Co.</u>, 414 F.3d 1342, 1345-47 (Fed. Cir. 2005), this does not mean the statements of the examiner are not pertinent to claim construction, especially when amendments to the claims prompted the examiner's statements. Id. at 1346-47. However, claim 34 indicates that there is "a somewhat flexible housing located <u>within</u> the structural housing and <u>to which the light source is coupled</u>." '727 patent, col. 7, ll. 37-38 (emphases added). Furthermore, claim 18, which depends from claim 17 uses the same limitation as claim 34. Id. at col 6, ll.33-34. If the term were interpreted to have the light source "directly" joined to the structural housing, there would be a validity issue with regard to claims 17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035 CAS (VBKx) | Date | November 12, 2010 |
|---|---|---|---|
| Title | RAYMOND CALUORI V. ONE WORLD TECHNOLOGIES, INC. | | |

and 18. Thus, because "claims are generally construed so as to sustain their validity, if possible," the Court construes this term to mean "physically joins the light source to the structural housing."[7] Whittaker Corp. by Technibilt Div. v. UNR Industries, Inc., 911 F.2d 709, 712 (Fed. Cir. 1990).

### G. "heat conductive"

Plaintiff asserts that this term should be construed to mean "capable of conducting heat." Plaintiff offers the dictionary definition of "conductive" to support this construction. Pl.'s Opening 13.

Defendant asserts that this term should be construed to mean "having the qualities of a conductor as opposed to an insulator." Defendant points to extrinsic evidence and argues that everything in nature is "capable" of conducting heat. Def.'s Opening 14. Defendant urges that in order to give meaning to the term, it must be distinguished from a thermal inductor. Id. Defendant also notes that the addition of the limitation "heat conductive" was essential to the examiner's allowance of the claim. Id. at 15. Plaintiff attempts to respond to this argument by pointing to the full language of the Notice of Allowance, Pl.'s Rebuttal 8-9, however, plaintiff's argument neglects the fact that all limitations prior to the mention of the hardened material being heat conductive were previously rejected without the additional limitation. See Reichenberger Decl., Ex. 22, 204, 207.

Thus, the Court construes this term to mean "having the qualities of a conductor as opposed to an insulator." Defendant is correct in pointing out that "[t]here would be no need to qualify the hardened material as being "heat conductive" if the term were simply defined as capable of conducting heat [because that property] is inherent in any material."

---

[7]The Court notes that the parties did not request that the term "light source" be independently construed by the Court, and thus, the Court assumes the term is not in dispute. The Court thus refrains from "add[ing] an additional layer of complexity," as claim construction is for "resolution of disputed meanings." Sulzer Textil A.G. v. Picanol N.V., 358 F.3d 1356, 1367 (Fed. Cir. 2004); U.S. Surgical, 103 F.3d at 1568 (emphasis added); see also Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035 CAS (VBKx) | Date | November 12, 2010 |
|---|---|---|---|
| Title | RAYMOND CALUORI V. ONE WORLD TECHNOLOGIES, INC. | | |

Def.'s Opening 14-15. The examiner's reliance on this limitation also suggests that the qualification is important to the patentability of the claim.

  **H. "somewhat flexible housing"**

  Plaintiff asserts that this term should be construed to mean "a support for the light source that can be flexed slightly." Plaintiff points to the dictionary definitions of the words "somewhat," "flexible," and "housing" to support this construction. Pl.'s Opening 14. Plaintiff also points to the use of the term in the specification to help define its meaning. Id. at 15.

  Defendant asserts that this term should be construed to mean "an enclosure made of pliable material."[8] Defendant first notes that "housing" should be an enclosure, so as

---

  [8]The Court acknowledges defendant's indefiniteness argument under 35 U.S.C. § 112, ¶ 2. The Court is persuaded by the cases indicating that a claim may still be found indefinite despite a construction by a court. See, e.g., Halliburton Energy Servs., Inc. v. M-I LLC, 514 F.3d 1244, 1251 (Fed. Cir. 2008) ("The fact that [the patent owner] can articulate a definition supported by the specification, however, does not end the inquiry. Even if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope."); Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1371 (Fed. Cir. 2008) ("In and of itself, a reduction of the meaning of a claim term into words is not dispositive of whether the term is definite. And if reasonable efforts at claim construction result in a definition that does not provide sufficient particularity and clarity to inform skilled artisans of the bounds of the claim, the claim is insolubly ambiguous and invalid for indefiniteness." (citing Halliburton)). "A claim satisfies the definiteness requirement of § 112 if one skilled in the art would understand the bounds of the claim when read in light of the specification." Praxair, Inc. v. ATMI, Inc., 543 F.3d 1306, 1319 (Fed. Cir. 2008) (internal quotation marks omitted). The standard is whether claims are amenable to construction, regardless of the difficulty; only claims not amenable to construction or insolubly ambiguous are indefinite. Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1347 (Fed. Cir. 2005). While the Court declines to resolve the issue at this stage, it appears that the claim allows for one skilled in the art to understand the bounds of the claim because the patent provides preferred dimensions and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035 CAS (VBKx) | Date | November 12, 2010 |
|---|---|---|---|
| Title | RAYMOND CALUORI V. ONE WORLD TECHNOLOGIES, INC. | | |

O

to be consistent with the claim term "structural housing." Def.'s Opening 19 (citing <u>Fin Control Sys. Pty, Ltd. v. OAM, Inc.</u>, 265 F.3d 1311, 1318 (Fed. Cir. 2001) (noting that there is a "presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims")). Defendant uses the synonym "pliant" to reach its definition of "pliable." <u>Id.</u>

Defendant's construction is too far removed from the plain meaning and dictionary definitions of the terms, however defendant's argument regarding consistency of claim terms has some merit. The specification notes that the "[l]aser diode 32 is held <u>in</u> housing 37." '727 patent, col. 3, ll. 60-61 (emphasis added). This suggests that the flexible housing acts as an enclosure similar to the structural housing construed earlier. Thus, the Court construes this term to mean "an enclosure for the light source that can be flexed slightly."

I.     "received in"

Plaintiff asserts that this term should be construed to mean "accepted in." Plaintiff points to the language in the specification that states "[o]pening 31 in extended housing portion 33 <u>accepts</u> a housing adjustment screw during final assembly of the device." Pl.'s Opening 16 (citing '727 patent, col. 4, ll. 5-7).

Defendant asserts that this term should be construed to mean "accepted by an opening in the flexible housing, rather than merely abutting the flexible housing." Defendant points to the same specification language as plaintiff for defendant's construction. Def.'s Opening 21. Defendant concedes that the figures of the embodiments show "an opening located in a housing." <u>Id.</u> Defendant also notes that "[t]he prepositional term 'in' is generally 'used as a function word to indicate inclusion, location, or position within limits.'" <u>Id.</u> at 20.

The Court is satisfied that the construction "accepted in" fully describes the claim

---

angles of the laser diode with respect to the structural housing and indicates that the flexibility of the somewhat flexible housing allows for adjustment of these dimensions and angles. '727 patent, col. 3-4, ll. 60-67, 1-25.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035 CAS (VBKx) | Date | November 12, 2010 |
|---|---|---|---|
| Title | RAYMOND CALUORI V. ONE WORLD TECHNOLOGIES, INC. | | |

term. This construction avoids adding a limitation that may be suggested only by the embodiments described in the specification. However, the Court notes the importance of the word "in" to this construction, as it carries its own customary meaning, as indicated by defendant.

### J.       "means for coupling"

The parties agree that this claim invokes 35 U.S.C. §112, ¶ 6, and agree to the proper way of construing such a means-plus-function claim. See Pl.'s Opening 17; Def.'s Opening 23.

Plaintiff asserts that this term should be construed to mean a "means for physically fastening the light source to the structural housing, using epoxy, glue adhesive and their equivalents." Plaintiff relies on similar arguments to its construction of the term "mechanically couples the light source to the structural housing." Pl.'s Opening 17.

Defendant asserts that this term should be construed to mean "directly joining the light source to the structural housing, using heat conductive epoxy, glue, or adhesive, or something structurally equivalent to an epoxy, glue or adhesive." Defendant's arguments also track its construction of the term "mechanically couples the light source to the structural housing." Def.'s Opening 23-24. Defendant further notes that the two constructions should be consistent. Id.

To be consistent, the Court construes this term to mean "physically joining the light source to the structural housing, using heat conductive epoxy, glue, or adhesive, or something structurally equivalent to an epoxy, glue, or adhesive." To be clear, this construction construes the portions of claims 8, 23, and 40 that read "means for coupling the light source to the structural housing."

### K.       "adjustable"

Plaintiff asserts that this term should be construed to mean "changeable." Plaintiff states that this is the accepted meaning of a commonly understood word. Pl's Opening 19. Plaintiff argues that defendant's construction is an attempt to limit the claim term to a preferred embodiment. See id. In particular, plaintiff notes that the word "manufacturing" is does not appear anywhere in the patent. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                               O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035 CAS (VBKx) | Date | November 12, 2010 |
|---|---|---|---|
| Title | RAYMOND CALUORI V. ONE WORLD TECHNOLOGIES, INC. | | |

Defendant asserts that this term should be construed to mean "capable of being altered during manufacturing assembly." Defendant notes that in the Summary of the Invention, the specification indicates an object of the invention is "to provide such a cut alignment device that requires no operator set-up." Def.'s Opening 22. Defendant goes on to reference multiple portions of the specification where any adjustment of the light source is accomplished during assembly of the device. See id.

In this instance, defendant's references to the specification go beyond mere embodiments, and go to the invention itself. Thus, narrowing this claim term based on the disclosure in the specification is not improper. See SciMed, 242 F.3d at 1341-45. The specification states,

> [a] key to the successful operation of a light-emitting rotary saw cut alignment device is to have the light beam focused at the proper location . . . . It has been found that these objectives can be accomplished with the construction shown in the drawings, which provide for focusing and proper angular displacement of the light emitted from the laser diode as part of the device assembly process. The members can then be fixed in place in the final assembly so that the device is ready for use.

'727 patent, col.2, ll. 43-55 (emphases added). This language indicates that the invention itself must have the light properly aligned, and that the device is not ready for use until the components are fixed in place during final assembly. Coupled with the portion quoted by defendant that indicates that an object of the invention is to require no operator set-up, it is clear that the invention requires that the components be fixed prior to any interaction with an end-user. Thus, the Court construes this term to mean "capable of being altered during device assembly." While this construction limits this term beyond is ordinary language, such added limitation is proper in this instance because of the clarity of the specification in this regard, which can be considered an implicit definition of the term. See Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, 262 F.3d 1258, 1271 (Fed. Cir. 2001) (citing SciMed and Vitronics).

**L.    "once the light source is adjusted"**

Plaintiff asserts that this term should be construed to mean "after the light source is adjusted." Plaintiff points to the language of the claims and the ordinary meaning to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035 CAS (VBKx) | Date | November 12, 2010 |
|---|---|---|---|
| Title | RAYMOND CALUORI V. ONE WORLD TECHNOLOGIES, INC. | | |

support this construction. Pl.'s Opening 20.

Defendant asserts that this term should be construed to mean "altered prior to permanent coupling of the light source during manufacturing assembly." Defendant makes arguments similar to its arguments for the construction of the term "adjustable" to support this construction. Def.'s Opening 24-25.

In order to be consistent with the construction of "adjustable," the Court construes this term to mean "after the light source is adjusted during device assembly." The reasoning for such a construction tracks the reasoning for the construction of the term "adjustable."

**V.    CONCLUSION**

In accordance with the foregoing, the Court concludes that (1) the limitation "structural housing" is construed to mean "a case that encloses one or more components"; (2) the limitation "partially hollow cylinder" has its plain meaning of "partially hollow cylinder"; (3) the limitation "raised support arms" is construed to mean "projections that extend above the inner bottom surface of the structural housing and that maintain the integrity of the housing and protect the components in the housing so that they are not crushed when the device is secured on an arbor"; (4) the limitation "pockets" is construed to mean "compartments"; (5) the limitation "hardened material" is construed to mean "a substance that becomes hard or harder"; (6) the limitation "mechanically couples the light source to the structural housing" is construed to mean "physically joins the light source to the structural housing"; (7) the limitation "heat conductive" is construed to mean "having the qualities of a conductor as opposed to an insulator"; (8) the limitation "somewhat flexible housing" is construed to mean "an enclosure for the light source that can be flexed slightly"; (9) the limitation "received in" is construed to mean "accepted in"; (10) the limitation "means for coupling" is a proper means-plus-function claim and is construed to mean "physically joining the light source to the structural housing, using heat conductive epoxy, glue, or adhesive, or something structurally equivalent to an epoxy, glue or adhesive"; (11) the limitation "adjustable" is construed to mean "capable of being altered during device assembly"; and (12) the limitation "once the light source is adjusted" is construed to mean "after the light source is adjusted during device assembly."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

# CIVIL MINUTES - GENERAL

| Case No. | CV 07-2035 CAS (VBKx) | Date | November 12, 2010 |
|---|---|---|---|
| Title | RAYMOND CALUORI V. ONE WORLD TECHNOLOGIES, INC. | | |

IT IS SO ORDERED.

|  | 00 | : | 30 |
|---|---|---|---|
| Initials of Preparer | | | CMJ |