UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035-CAS (VBKx) | Date | February 27, 2012 |
|---|---|---|---|
| Title | RAYMOND CALUORI v. ONE WORLD TECHNOLOGIES, INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | LAURA ELIAS | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Erwin Adler | Melanie Reichenberger |
| | Richard Marschall |
| | S. Edward Sarskas |

**Proceedings:** **DEFENDANT'S MOTION TO EXCLUDE STEPHEN P. HEATH** (filed February 1, 2012)

## I.   INTRODUCTION

Plaintiff Raymond Caluori ("plaintiff" or "Caluori") filed the instant action against defendants Ryobi Limited, Techtronic Industries, Co. Ltd, and Does 1 through 100 on March 3, 2007.  On May 5, 2007, plaintiff filed his first amended complaint against defendants Ryobi North America, Ryobi Technologies Inc., Techtronic Industries North America, Ryobi Limited, Techtronic Industries Co. Ltd, and Does 1 through 100.  On July 11, 2007, plaintiff filed his second amended complaint against One World Technologies, Inc ("OWT" or "defendant"), Ryobi Limited, Ryobi North America, Inc., and Does 1 through 100 alleging claims for (1) patent infringement and (2) willful infringement of patent.

On February 1, 2012, defendant filed the instant motion to exclude plaintiff's damages expert, Stephen P. Heath.  Plaintiff opposed the motion on February 6, 2012.  Defendant replied on February 13, 2012.  The Court heard oral argument on February 27, 2012.  After considering the parties arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035-CAS (VBKx) | Date | February 27, 2012 |
|---|---|---|---|
| Title | RAYMOND CALUORI v. ONE WORLD TECHNOLOGIES, INC., ET AL. | | |

## II. BACKGROUND

### A. General Background

This action arises from the alleged infringement of U.S. Patent 6,915,727, entitled "Angled Light Beam Rotary Saw Cut Alignment Device" ("the '727 patent").

On July 12, 2005, the United States Patent and Trademark Office issued the '727 patent to Raymond Caluori in response to an application filed July 29, 2002, claiming priority to a provisional application filed July 31, 2001. '727 patent, col. 1, 5–10. The patent concerns a device that uses a battery powered light source to project light onto an object to be cut by a rotary saw in order to align the cut of the saw.[1] Id. at col. 1, 10–15, 31–32.

Plaintiff's second amended complaint contends that defendant deliberately copied his patented device, known as the BladePoint, and that defendant promoted, marketed, and sold an infringing device. Plaintiff has retained Stephen P. Heath to provide opinions regarding the damages attributable to defendant's conduct.

### B. Heath's Opinions

Heath's primary opinion applies the "market approach,"[2] and is based upon a settlement agreement that he opines establishes a starting royalty rate in this case of $3.50 per allegedly infringing unit sold by defendant. Specifically, Heath relies on an agreement settling litigation between plaintiff and another allegedly infringing company,

---

[1] A detailed description of the '727 patent can be found in the Court's Markman order. Dkt. No. 116.

[2] The market approach focuses substantially on examining agreements related to the patent-in-suit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035-CAS (VBKx) | Date | February 27, 2012 |
|---|---|---|---|
| Title | RAYMOND CALUORI v. ONE WORLD TECHNOLOGIES, INC., ET AL. | | |

Bosch, by which Bosch agreed to pay plaintiff a lump-sum of $350,000 for the sale of up to 100,000 units and $12.75 for every sale thereafter ("the Bosch Agreement"). The Bosch Agreement gave Bosch a non-exclusive license to plaintiff's '727 patent as well as to two other patents, the '757 patent and the '951 patent.[3]

According to Heath, the Bosch Agreement constitutes a reliable benchmark for determining a reasonable royalty rate under a hypothetical license agreement between plaintiff and OWT in this case. In reaching this conclusion, Heath notes the importance of the absence of other license agreement for laser alignment devices. Heath opines that the effective per unit royalty for Bosch's first 100,000 sales under the '727 patent would range from $6.09 (if Bosch sold no more than the approximately 57,500 units it had already sold at the time it entered into the settlement agreement with plaintiff) to $3.50 (if Bosch sold 100,000 units). Report of Stephen P. Heath ("Heath Report"), ¶¶ 54–69.

Heath attempts to corroborate his finding under the market approach by applying an "income approach." Under the income approach, Heath attempts to determine the profits associated with incorporating the plaintiff's patented intellectual property into OWT's products.[4] To determine the profits derived from OWT's alleged infringement of

---

[3] The '757 patent concerned an earlier model of plaintiff's device and was originally issued to plaintiff and a co-inventor, but was invalidated before Bosch and plaintiff entered into their settlement agreement. The '951 patent covers the shape of plaintiff's design.

[4] Heath explains his purpose in applying the income approach as follows:

> The patent owner is entitled to compensation for the portion of the benefits of the product or process that is due to the intellectual property. The licensee should retain certain benefits derived from other attributes of the product or process that incorporates the intellectual property at issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035-CAS (VBKx) | Date | February 27, 2012 |
|---|---|---|---|
| Title | RAYMOND CALUORI v. ONE WORLD TECHNOLOGIES, INC., ET AL. | | |

the '727 patent, Heath first analyzes OWT's internal costs and its revenue documents to isolate OWT's profit associated with adding laser devices to its products. Heath then determines a range of profits associated with the sale of defendant's products containing a laser device, which he indicates must be adjusted downward to account for unpatented features of the devices. Id., ¶ 106.

Heath next turns his analysis to a "cost approach."[5] In his report, Heath recognizes that he does not have sufficient information to employ such an approach. Heath Report, ¶ 112. However, in his deposition, Heath explains that defendant's expert, Richard Bero, supplied data which enabled Heath to perform a cost approach analysis. Heath further explains that using the information supplied by Bero, he could identify the sale price, unit cost and resulting profit associated with defendant's legal alternative to using technology covered by the '727 patent. Heath then opines that defendant earns a median profit of $7.31 on sales of its laser devices, and that using a non-infringing alternative would cost defendant $3.65 per unit, such that defendant gained an "excess profit" attributable to its infringement of approximately $3.65 per unit. Deposition of Stephen P. Heath ("Heath Depo."), 21:23–22:12; 44:5–49:2.

Heath summarizes his findings applying the market, income, and cost approaches as follows: "I conclude that the Quantitative Methods yield a royalty rate of $3.50 per unit. This is equal to the rate found within the Bosch Agreement and lower than the per unit profit attributable to the Accused Laser Guides." Heath Report, ¶ 116.

Finally, Heath focuses on the fifteen qualitative factors for determining damages set forth in Georgia Pacific Corp. v. United States Plywood Corp., 318 F.Supp.1116

---

Heath Report, ¶ 86.

[5] The cost approach attempts to evaluate the cost to defendant of developing or incorporating a non-infringing technology.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035-CAS (VBKx) | Date | February 27, 2012 |
|---|---|---|---|
| Title | RAYMOND CALUORI v. ONE WORLD TECHNOLOGIES, INC., ET AL. | | |

(S.D.N.Y. 1970). Based on his review of the Georgia Pacific factors, Heath concludes that the overall royalty rate should be $3.75 per unit, explaining that:

> The quantitative analysis indicates a reasonable royalty rate of $3.50 per unit . . . The qualitative analysis indicates 12 factors have a neutral impact on the starting point royalty rate and three factors have an upward impact on the reasonable royalty rate derived in the quantitative section of this report.

Heath Report, ¶ 159.

### III. LEGAL STANDARD

Under Rule 702 of the Federal Rules of Evidence,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Prior to admitting expert testimony, the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-93 (1993). Under Daubert, it is the trial court's duty to ensure that all expert testimony comports with Rule 702 and is both reliable and relevant. Id. at 589. Thus, the court functions as a gatekeeper and must exclude evidence that is either irrelevant or unreliable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035-CAS (VBKx) | Date | February 27, 2012 |
|---|---|---|---|
| Title | RAYMOND CALUORI v. ONE WORLD TECHNOLOGIES, INC., ET AL. | | |

See Sundance, Inc. v. Demonte Fabricating Ltd., 550 F.3d 1356, 1360 (Fed. Cir. 2008). In the patent context, if the patent holder fails to tie the expert's theory to the facts of the case, the expert's testimony must be excluded. Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1315 (Fed. Cir. 2011).

In evaluating the Rule 702 factors, the court must first determine whether the witness is qualified to testify as an expert. Daubert, 509 U.S. at 588. Second, a court must determine that the expert's testimony is reliable. Daubert provides several factors that a court should consider in determining an expert's reliability, including: (1) whether the theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; and (3) whether the theory has been generally accepted in the relevant professional community. See id. at 593–94. The Daubert analysis is a flexible one, and ultimately requires a court to determine whether the methodology underlying the expert's testimony is sound. Id. However, any expert's testimony that is based upon flawed methodology or that is speculative and not tied to the facts of the case muse be excluded as unreliable. Microstrategy Inc., v. Business Objects, S.A., 429 F.3d 1344, 1353 (Fed. Cir. 2005). Whether or not an expert report is reliable is an admissibility determination committed to the sound discretion of the court. Id. at 1355. Finally, a court must determine that the expert's testimony is relevant. Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Daubert, 509 U.S. at 587.

## IV.   DISCUSSION

### A.   Heath's Qualifications to Render an Expert Opinion in this Case

As an initial matter, the Court rejects OWT's contention that Heath does not have "any experience" that would assist the jury in understanding the economic value of the '727 patent. See Mot. at 7. In reaching this determination, the Court finds significant that Heath received a B.S. in Business Administration, that he is a Certified Public

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035-CAS (VBKx) | Date | February 27, 2012 |
|---|---|---|---|
| Title | RAYMOND CALUORI v. ONE WORLD TECHNOLOGIES, INC., ET AL. | | |

Accountant, and that his opinions regarding the calculation of royalties have been admitted in dozens of patent infringement cases over the last decade. Heath has also published several papers on patent damages and given numerous presentations concerning the calculation of patent damages. Heath Report, Tab 4.

### B. Heath's Reliance on the Bosch Agreement

OWT argues that Heath's market approach analysis does not meet the requirements of Daubert because Heath derived irrelevant and unreliable opinions entirely from a "lump-sum" settlement agreement that is not comparable to the hypothetical negotiation between plaintiff and OWT. Mot. at 8–14.

In opposition, plaintiff argues that it was not improper for Heath to rely on the Bosch Agreement in determining the reasonable royalty rate for a hypothetical negotiation between plaintiff and OWT. In support of this argument, plaintiff cites ResQNet.com, Inc. v. Lanza, Inc., 594 F.3d 860, 872 (Fed. Cir. 2010), in which the Federal Circuit "observ[ed] as well that the most reliable license in this record arose out of litigation." Plaintiff argues that if it were unclear whether a settlement agreement could be used to establish a royalty rate before ResQNet, numerous district court holdings demonstrate that the issue is now resolved. Opp'n at 17.

The Court finds that Heath's opinions are based on a comparable licensing agreement, and therefore that they are not unreliable. In order to be "comparable," a license agreement must be "clearly linked to the economic demand for the claimed technology." ResQNet, 594 F.3d at 872–73. Further, a "comparable" license must provide relevant information about the value of the license to the patent-in-suit. Id. at 869; see also Worldtech Sys., Inc. v. Integrated Network Solutions, Inc., 609 F.3d 1308, 1320 (Fed. Cir. 2011) ("Running royalty agreements can be relevant to lump-sum damages, but 'some basis for comparison must exist in the evidence presented to the jury.'") (quoting Lucent Techs., Inv. v Gateway, Inc., 580 F.3d 1301, 1329 (Fed. Cir. 2009)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035-CAS (VBKx) | Date | February 27, 2012 |
|---|---|---|---|
| Title | RAYMOND CALUORI v. ONE WORLD TECHNOLOGIES, INC., ET AL. | | |

     As an initial matter, the Court rejects defendants' contention that the Bosch Agreement could not reliably be used to develop a reasonable royalty in a hypothetical negotiation between plaintiff and OWT in this case. In reaching this conclusion, the Court is mindful of the Federal Circuit's guidance that the "most reliable" license may arise out of litigation. ResQNet, 594 F.3d at 872. Indeed, numerous district court holdings since ResQnet confirm that it is not unreasonable to rely on a settlement agreement for the purpose of establishing reasonable royalty rates. For example, in Small v. Nobel Biocare USA, LLC, the court noted that although ResQNet did not address the "admissibility of the litigation licenses . . . the [Federal] Circuit . . . nevertheless appeared to endorse an approach in which the district court . . . considers all information concerning royalty rates for the patent in suit." 2011 U.S. Dist. LEXIS 77838, *17 (S.D.N.Y. July 19, 2011). Likewise, in C&C Jewelry Mfg, Inc. v. West, the court explained that after ResQNet, settlement documents are relevant, "at a minimum" to damages calculations. 2010 WL 3943672, at *2 (N.D. Cal. Oct. 7, 2010). Accordingly, the Court does not believe Heath's opinions should be excluded on the basis that he relied on the Bosch Agreement. Insofar as OWT objects that the Bosch Agreement "resulted from litigation," that argument is better addressed to the weight to be accorded to Heath's opinions, rather than their admissibility.[6]

---

[6] At oral argument, defense counsel argued that the Federal Circuit's decision in Trell v. Marlee Elecs. Corp., 912 F.2d 1443 (Fed. Cir. 1990), demonstrates that Heath's reliance on the Bosch agreement was unreliable. The Court finds this argument unavailing. In Trell, the Federal Circuit held that "[a] single licensing agreement, without more is insufficient proof of an *established* royalty." Id. at 1446 (emphasis added). In this case, Heath does not rely on the Bosch Agreement as proof of an established royalty for plaintiff's technology, but merely uses it to show a *reasonable* royalty between plaintiff and OWT in a hypothetical negotiation. Further, in Trell, the Federal Circuit found significant that the district court failed to consider substantial evidence in the record, some of which negated the district court's reliance on the license agreement. Id. Here, the Court merely concludes that Heath's reliance on the Bosch Agreement was not unreliable. It does not decide whether other evidence in the record would preclude the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035-CAS (VBKx) | Date | February 27, 2012 |
|---|---|---|---|
| Title | RAYMOND CALUORI v. ONE WORLD TECHNOLOGIES, INC., ET AL. | | |

  The Court also rejects OWT's contention that the Bosch Agreement failed to identify a per unit royalty rate and is therefore non-comparable to the hypothetical negotiations between plaintiff and OWT in this case.  See Mot. at 8–10.  In this respect, Heath explained in his report that the Bosch Agreement provides that each unit sold in excess of 100,000 units requires a payment to plaintiff of $12.75.  Further, Heath also concluded that the Bosch Agreement provided sufficient information to determine an effective per unit rate for sales up to 100,000 units.  Specifically, Heath stated that "Bosch Agreed to pay effective per unit royalties in the range of $3.50 to $6.09 for unit sales less than 100,000."  Heath Report, ¶ 64.  In determining the reasonable royalty rate to be applied in this case, Heath's testimony that he used the minimum rate of $3.50 as one factor in his analysis is sufficiently reliable to meet the requirements of Daubert.

  Finally, the Court is unpersuaded that Heath's reliance on the Bosch Agreement is not reliable simply because it includes licensing rights to two patents not at issue in this case.  As Heath explained, the other licenses covered by the Bosch Agreement had no value.  First, with respect to the '757 patent, the PTO had reexamined and cancelled all claims of the '757 patent before plaintiff and Bosch entered into their agreement.  Next, Bosch never used the design identified in plaintiff's '951 patent—either before or after it entered into the Agreement with plaintiff.

  In sum, the Court finds that the Bosch Agreement provides relevant information about the value of the license to the patent-in-suit and is therefore comparable to the hypothetical negotiation between plaintiff and OWT in this case.  ResQNet, 594 F.3d at 869.  Thus, Heath's reliance thereon was not unreliable, and the Court declines to exclude his opinions on that basis.  Cf DataQuill Ltd v. High Tech Computer Corp., 2011 U.S. Dist. LEXIS 138565, *59 (S.D. Cal. Dec. 1, 2011) ("The testimony of a damages expert in a patent suit who relies on non-comparable licenses in reaching his royalty rate should be excluded.").

---

fact finder from relying exclusively on the Bosch Agreement to establish a reasonable royalty rate in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035-CAS (VBKx) | Date | February 27, 2012 |
|---|---|---|---|
| Title | RAYMOND CALUORI v. ONE WORLD TECHNOLOGIES, INC., ET AL. | | |

### C. Heath's Remaining Opinions

OWT argues that the remainder of Heath's analysis is incomplete and unreliable because Heath fails to identify any evidence that apportions OWT's profits and plaintiff's damages between the patented technology and its unpatented features. Mot. at 15–16 (citing Heath Depo. 152:7–21, 154:6–21). According to OWT, Heath's analysis is therefore in violation of the "entire market value rule."[7] Id. (citing Uniloc 632 F.3d at 1318; DataQuill Ltd, 2011 U.S. Dist. LEXIS 138565, at *74).

In opposition, plaintiff argues that Heath never tries to use the entire market value rule to calculate a royalty. Instead, according to plaintiff, Heath properly isolates the profit relating to the use of the patented technology in OWT's products. Opp'n at 20–22.

The Court finds that Heath did not improperly apply the entire market value rule in calculating the reasonable royalty rate for a hypothetical negotiation between plaintiff and OWT in this case. Although it is true that the first step in Heath's analysis involved a determination of OWT's profits due to the addition of a complete laser guide rather than that due to the addition of plaintiff's patented feature, Heath's analysis does not end at that point. Instead, Heath explains that after he calculates the total profit generated by the addition of the laser guide, Heath ascertains the cost of OWT's best non-infringing alternative. By subtracting the cost of OWT's best alternative from the total profits due to the addition of the laser guide, Heath asserts that he is able to ascertain the portion of

---

[7] The Federal Circuit recently explained that:

The entire market value rule allows a patentee to assess damages based on the entire market value of the accused product only where the patented features creates the 'basis for customer' demand or 'substantially create[s] the value of the component parts.'

Uniloc, 632 F.3d at 1318 (citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035-CAS (VBKx) | Date | February 27, 2012 |
|---|---|---|---|
| Title | RAYMOND CALUORI v. ONE WORLD TECHNOLOGIES, INC., ET AL. | | |

the profit derived from the use of plaintiff's patented technology. The Federal Circuit approved of precisely such an "analytical approach" in <u>TWM Mfg. Co. Inc. v. Dura Corp.</u>, 789 F.2d 895, 899 (Fed. Cir. 1986).[8] The Court declines to find it unreliable here.

     The Court recognizes that Heath's report does not specifically incorporate the "analytical approach" approved of by the Federal Circuit in <u>TWM Mfg.</u>, 789 F.2d at 899. Nevertheless, Heath explained in his deposition that he was able to conduct such analysis only after receiving information from defendant's expert not previously provided by OWT. <u>See</u> Heath Depo., 21:23–22:12. Therefore, while Heath's opinions need not be stricken, consistent with Federal Rule of Civil Procedure 26, Heath must supplement his report to include this analysis.[9] OWT shall then have an additional opportunity to depose Heath regarding his application of the analytical approach. Such deposition shall not exceed four hours in length.[10]

---

     [8] The "analytical approach" entails the subtraction of the infringer's usual or acceptable net profit from its anticipated net profit realized from sales of infringing devices. <u>TWM Mfg.</u>, 789 F.2d at 899.

     [9] Federal Rule of Civil Procedure 26(a)(2) requires that expert witnesses prepare and sign a written report that must be disclosed to all other parties. Fed. R. Civ. P. 26(a)(2). That report must include (1) the expert's opinions and reasons for them, (2) the facts or data considered, (3) any exhibits to be used, (4) the expert's qualifications, (5) other cases in which the expert has testified, and (6) the compensation paid to the expert. <u>Id.</u> A party must supplement a 26(a)(2) disclosure or deposition testimony when it learns that the disclosure is "incomplete or incorrect." Fed. R. Civ. P. 26(e); <u>Tenbarge v. Ames Taping Tool Systems</u>, Inc. 190 F.3d 862, 866 (8th Cir. 1999) (ordering a new trial because the defendant failed to inform the plaintiff of changes in an expert's testimony between deposition and trial).

     [10] Because Heath's analysis is not limited to a calculation of the total profit generated by OWT's allegedly infringing devices, the Court declines to address whether

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2035-CAS (VBKx) | Date | February 27, 2012 |
|---|---|---|---|
| Title | RAYMOND CALUORI v. ONE WORLD TECHNOLOGIES, INC., ET AL. | | |

## IV.   CONCLUSION

In accordance with the foregoing, the Court DENIES defendant's motion to exclude plaintiff's damages expert, Stephen P. Heath.  The Court hereby orders Heath to supplement his expert report within twenty-one (21) days to specifically include an analysis under the "analytical approach" articulated in <u>TWM Mfg.</u>, 789 F.2d at 899.

IT IS SO ORDERED.

|  | 00 | : | 10 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

---

the analysis would otherwise run afoul of the entire market rule.