ERWIN E. ADLER (Bar No. 40638)
ADLER LAW GROUP
350 So. Figueroa St., Suite 557
Los Angeles, California 90071
Telephone:  (213) 893-3900
Facsimile:  (213) 893-3910

Attorneys for Plaintiff
RAYMOND CALUORI

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND CALUORI, an individual<br>Plaintiff,<br><br>v.<br><br>ONE WORLD TECHNOLOGIES, INC., RYOBI, LIMITED, RYOBI NORTH AMERICA, INC.  and DOES 1 through 100,<br>Defendants. | Case No.: CV 07-2035 CAS (VBKx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CALUORI'S IN LIMINE MOTION NO.  2, i.e., TO PRECLUDE ONE OF OWT'S "EXPERTS,"i.e., MICHAEL GILLILAND, FROM REPEATING THE OPINIONS PREPARED BY ANOTHER OWT EXPERT, i.e., PAUL WRIGHT** |

ADLER LAW GROUP
350 So. Figueroa St., Suite 557
Los Angeles, California 90071

ADLER LAW GROUP
350 So. Figueroa St., Suite 557
Los Angeles, California 90071

## I. PRELIMINARY STATEMENT

This in limine motion by Raymond Caluori seeks to bar OWT from having one expert (Paul Wright) prepare a report regarding his analysis and opinions and then, having a second expert (Michael Gilliland) testify as to that report as setting forth Wright's research work and opinions as being Gilliland's.

## II. FACTUAL STATEMENT

This *in limine* motion addresses OWT's effort to repetitively present the analysis of facts and conclusions reached by *one* witness *through the mouths of two separate expert witnesses.* As explained below, OWT retained an expert witness, Prof. Wright. He testified he prepared all aspects of that report except for some legal nuances as well as a rebuttal report. In each he stated his conclusion that OWT had not infringed Caluori's '727 patent. Despite Wright's testimony that he had prepared the reports in their entirety and had not communicated with anyone else about them, OWT submitted a second copy of them signed by another purported expert, Michael Gilliland. Gilliland's initial report is identical to Wright's, including typographical errors. Similarly, Gilliland signed another copy of the Wright rebuttal report, apparently as his own.

Wright expressly testified at his deposition he prepared all aspects of his initial and rebuttal reports by himself. He further testified no one assisted him and he did not have any contact with anyone except for OWT's lawyers who provided some input on "legal nuances." In sum, Wright explained:

- Wright engaged in an engineering analysis of Caluori's device by himself; he never discussed that analysis with anyone else.

- Wright prepared an initial expert report setting forth his opinions and conclusions about the Caluori and OWT devices without discussing the report with anyone.

- Wright – after reviewing the reports of Caluori's experts – prepared a rebuttal

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CALUORI'S IN LIMINE MOTION NO. 2, I.E, TO PRECLUDE ONE OF OWT'S "EXPERTS,"i.e., MICHAEL GILLILAND, FROM REPEATING THE OPINIONS PREPARED BY OWT EXPERT PAUL WRIGHT

1   report.  Again, he did so with the assistance or input of any other person.

2   In sum, Wright unequivocally testified he performed every aspect of the engineering

3   analysis himself which, in turn, led to him preparing his reports by himself with the

4   exception, as he indicated, of "legal nuances" which he discussed with OWT's lawyers.[1]

5   Other than the two textbooks he consulted he testified, "I'm an engineer and engineering

6   aspects of those reports are clearly mine."[2]  Nor, except for those two textbooks did he

7   review any materials produced by another.[3]  In that same unambiguous fashion, Wright

8   testified he prepared his rebuttal report by himself.[4]  In sum, he testified he performed

ADLER LAW GROUP
350 So. Figueroa St., Suite 557
Los Angeles, California 90071

_____

[1]Wright testified:

"Q.   So it would be accurate to say that other than the areas which you dealt
      with in terms of legal nuances and legal concepts, the entirety of report
      that is identified as Exhibit 125 was prepared by you; correct?

A.    Yes.  Yes."

Wright Depo. 10:11-15, Adler Decla., Exh. "A," p. 7.

[2]Wright Depo: 10:4-5, Adler Decla., Exh."A," p. 7.

[3]In that respect , Wright testified:

"Q.   If you'd used any material other than the references that you had for –
      from the lawyers to prepare that report, you have noted that in the report;
      correct?

A.    Yes."

Wright Depo. 10:16-22, Adler Decla., Exh. "A," p. 7.

[4]Wright indicated his responses to questions about his initial expert witness report –
that he had prepared the entire report without any input by others – also applied to his
rebuttal report, testifying:

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CALUORI'S IN LIMINE
MOTION NO. 2, I.E, TO PRECLUDE ONE OF OWT'S "EXPERTS,"i.e., MICHAEL GILLILAND,
FROM REPEATING THE OPINIONS PREPARED BY OWT EXPERT PAUL WRIGHT

1  all of the analysis by himself except for "legal nuances."[5]  *Put simply, Wright testified*

2  *he did all of the engineering work used to create the report.  And, in preparing the*

3  *report, he never spoke to Gilliland or received any information from Gilliland.  Further,*

4  *Wright testified he wrote all portions of these reports any input from anyone regarding*

5  *the engineering issues.*  And, after so testifying, he never changed any of his testimony

6  to indicate anyone had participated in preparing any substantive portion of the report.

7  Wright prepared extensive reports on the engineering and mechanical issues.  His

8

9

10

11  Q.   And if I were to ask you the same questions as to Exhibit 126 [i.e.,
12       Wright's rebuttal report], you answer would be exactly the same;
13       correct?

14  A.   Yes.

15  Q.   You prepared the entirety of Report 126; correct?
16                          *      *      *

17  A.   My answer is the same as before, which is that there are legal nuances
18       that the counsel did provide and yet the report focuses on engineering
19       aspects which I wrote.

20  Wright Depo. 11:2-12, Adler Decla., Exh. "A," p. 8.

21  [5]Wright further testified:

22  "Q.   Professor Wright, in terms of preparing the [rebuttal]  report which is
23        identified as Exhibit 126, you prepared the entirety of all of the
24        engineering aspects that are included in that report; correct?

25  A.   Yes."

26  Wright Depo. 12:4-8, Adler Decla., Exh. "A," p. 9.

27

28  **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CALUORI'S IN LIMINE MOTION NO. 2, I.E, TO PRECLUDE ONE OF OWT'S "EXPERTS,"i.e., MICHAEL GILLILAND, FROM REPEATING THE OPINIONS PREPARED BY OWT EXPERT PAUL WRIGHT**

3

ADLER LAW GROUP
350 So. Figueroa St., Suite 557
Los Angeles, California 90071

1  initial report was ____ page long[6] while his rebuttal report had ___ pages.[7] Not surprising,

2  such lengthy reports caused Wright to make various typographical errors.  While none

3  of these errors affect the substance of his reports, they appear at a variety of locations.[8]

4          While Wright unequivocally testified he prepared all substantive infringement

5  issues of his initial and rebuttal reports by himself, OWT's counsel apparently sent a

6  copy of each of Wright's reports to Gilliland.  Although, as Wright testified, he prepared

7  each report without anyone's assistance or even, input, Gilliland nonetheless signed a

8  second *identical* copy of each of Wright's reports.  OWT forwarded those copies of

9  Wright's reports – which Wright prepared but Gilliland signed – to Caluori's counsel.[9]

10  Since the copies of the reports signed by Gilliland – except for Gilliland's signature and

11  CV – were mere copies of the reports Wright prepared, both reports bearing Gilliland's

12  signature were mere copies of the reports Wright had prepared.  Since those latter copies

13

14  _____

15  [6]Wright Depo. Exh. 125, Adler Decla., Exh. "B."

16

17  [7]Wright Depo. Exh. 126, Adler Decla., Exh. "C."

18  [8]Wright's initial expert report included such typographical errors as the following:

19  •      Wright stated: "the differences between the claimed subject matter and the
20         prior art are such that the subject matter as [a] whole at the time of the
21         invention."  Wright initial report, Adler Decla., Exh. "B" p. 25, line 5.  (The
        failure to include the "a" was plainly incorrect.)

22

23

24

25  •      Wright used the phrase "OWT's prototype was an actual device *was* assembled
        and tested at OWT."  *Id.*, p. 47, line 5.  (The second "was" is redundant.)

26

27  [9]Adler Decla., Exhs "D" and "E."

28  **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CALUORI'S IN LIMINE MOTION NO. 2, I.E, TO PRECLUDE ONE OF OWT'S "EXPERTS,"i.e., MICHAEL GILLILAND, FROM REPEATING THE OPINIONS PREPARED BY OWT EXPERT PAUL WRIGHT**

ADLER LAW GROUP
350 So. Figueroa St., Suite 557
Los Angeles, California 90071

1  included the same typographical errors as Wright's reports, it does not appear Gilliland

2  even read Wright's reports before signing them.[10]

3        While, in a "meet and confer" regarding in limine motions between counsel for the

4  parties held on April 10, 2012, Caluori's counsel pointed out such duplication was

5  improper.[11]  In response, OWT's counsel tried to rationalize this maneuvering by, in

6  effect, indicating Wright had testified falsely.  Thus, they asserted they, not Wright, had

7  prepared the initial and the rebuttal reports.  Further, they stated the initial expert report

8  was "really" Wright's work while the rebuttal report was "really" Gilliland's work.  But,

9  in that context, OWT's counsel failed to explain Wright's unequivocal testimony to the

10  contrary.  Neither did they provide any explanation as to Wright's failure to change his

11  transcript if he had testified falsely.  Nor did they explain why, if that explanation were

12  true, why they failed to react if they knew Wright was perjuring himself.

13        As discussed below and based upon the foregoing, Gilliland's testimony should

14  be excluded because any such testimony – which would have to follow "his"

15  report (which he never prepared) – would be cumulative under Fed. R. Evid.

16  403.[12]  Further, since Gilliland never "prepared" the report as required by F.R.Civ.

ADLER LAW GROUP
350 So. Figueroa St., Suite 557
Los Angeles, California 90071

---

18

19  [10]Thus, the examples of the typographical errors in Wright's opening report noted
    above (at fn. 8 *supra*), also appear in Gilliland's report in the identical locations.

20  Wright's first error appears on page 8, line 5 of Gilliland's report (Exh. "D," p. 150;

21  his second error on page 8, line 19 (Id., p.150; and his third error on page 30, line 5.
    (*Id.*,  p. 172, line 5.)

22

23  [11]Adler Decla., ¶ 6.

24  [12]That rule provides:

25      "Rule 403. Excluding Relevant Evidence for Prejudice, Confusion, Waste of

26      Time, or Other Reasons

27

28  **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CALUORI'S IN LIMINE
    MOTION NO. 2, I.E, TO PRECLUDE ONE OF OWT'S "EXPERTS,"i.e., MICHAEL GILLILAND,
    FROM REPEATING THE OPINIONS PREPARED BY OWT EXPERT PAUL WRIGHT**

1    Pro. 26, his testimony is inadmissible.

2

3    **III.   LEGAL ANALYSIS**

4        A.    *No litigant, including OWT, has the right to present duplicative testimony*
             *in support of its position*
5

6        OWT retained Professor Wright to testify as to whether OWT's device infringed

7    Caluori's '727 patent. To the degree Wright thought necessary, he testified he reviewed

8    all engineering aspects of both devices himself. Wright performed certain tests himself.

9    Wright researched the literature he thought was relevant by himself. Wright testified he

10   prepared his initial expert report by himself (except for "legal nuances"). Then, Wright,

11   after reviewing the reports of Caluori's experts, wrote a rebuttal report by himself.

12       OWT's counsel, instead of relying on Wright's work and his preparation of

13   reports, forwarded copies of his reports to Gilliland. And the latter copied those reports

14   and proffered them as his own work (after signing them and inserting his own CV). As

15   noted above, Gilliland does not appear to have even read the reports Wright prepared

16   since he did not correct Wright's typographical errors.

17       Plainly, OWT cannot have two people present the same opinions based on reports

18   prepared by one of them. In short, Gilliland – unlike an actor sent by Central Casting to

19   mouth words written by another – cannot be a mouthpiece to repeat Wright's

20   conclusions. F.R. Evid 403 bars cumulative presentation of evidence and duplication of

21   expert opinions. OWT's tactic is not entirely novel. Although Rule 403 has guided the

22   introduction of evidence in federal courts for almost four decades, no court has permitted

23   a litigant to hire an expert to prepare a report and then, permit a second expert to copy

24       The court may exclude relevant evidence if its probative value is substantially

25       outweighed by a danger of one or more of the following: unfair prejudice,

26       confusing the issues, misleading the jury, undue delay, wasting time, or

27       needlessly presenting cumulative evidence."

28   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CALUORI'S IN LIMINE
     MOTION NO. 2, I.E, TO PRECLUDE ONE OF OWT'S "EXPERTS,"i.e., MICHAEL GILLILAND,
     FROM REPEATING THE OPINIONS PREPARED BY OWT EXPERT PAUL WRIGHT

ADLER LAW GROUP
350 So. Figueroa St., Suite 557
Los Angeles, California 90071

the first expert's report and present that report as his own.   Rule 403 bars such cumulative testimony by providing as follows:

> "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

One court explained the general necessity of excluding cumulative testimony by relying on the frequently quoted maxim of Justice Holmes: Life is too short to permit a trial to be flooded with unnecessary, cumulative testimony particularly where such duplication is presented by duplicate experts:

> "The Court limited the number of experts in order to prevent the 'needless presentation of cumulative evidence.' [citation]   The Court must have wide discretion to exclude such cumulative evidence, particularly when it comes in the form of expert testimony, if the Court is to conduct a trial efficiently. [citation]. No court should abdicate its control over a trial in favor of the proclivities of expert witnesses. In this case the Court's objection to cumulative expert testimony was 'a purely practical one – a concession to the shortness of life.' *Reeve v. Dennett* , 145 Mass. 23, 28, 11 N.E. 938, 944 (1887) (Holmes, J.) (commenting on the introduction of collateral issues). The decision to limit the number of experts was necessary for the Court to exercise control over the trial and, in particular, to keep the trial from becoming unnecessarily long."[13]

The term "cumulative" is relatively direct and uncomplicated.   As explained by the appellate courts, quoting Black's LAW DICTIONARY:

> "Cumulative evidence" is defined as evidence 'which goes to prove what has already been established by other evidence.' Black's Law Dictionary 343 (5th ed. 1979)."[14]

When Wright testifies, his testimony will set forth OWT's position.   And thus Gilliland – who could not disregard the substance of the copies of the reports he signed – would be obliged to reiterate Wright's observations and conclusions.   Put another way, since

[13]*White v. W.G.M. Safety Corp.*, 1988 U.S. Dist. LEXIS 14293, 2-3 (S.D. Ga. 1988).

[14]*Smith v. Secretary of N.M. Dep't of Corrections*, 50 F.3d 801, 829 (10th Cir. 1995).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CALUORI'S IN LIMINE
MOTION NO. 2, I.E, TO PRECLUDE ONE OF OWT'S "EXPERTS,"i.e., MICHAEL GILLILAND,
FROM REPEATING THE OPINIONS PREPARED BY OWT EXPERT PAUL WRIGHT

7

ADLER LAW GROUP
350 So. Figueroa St., Suite 557
Los Angeles, California 90071

1  the federal rules require Gilliland to follow the report Wright prepared, Gilliland's
2  testimony is also obliged to be identical and thus, cumulative" to Wright's testimony.[15]

3       Wright, in the reports he prepared, reached certain conclusions. Rule 403,
4  however, precludes Gilliland from restating the same evidence merely because he copied
5  and signed Wright's reports. As the courts have indicated, even more roundabout
6  methods of trying to present cumulative evidence is improper. Thus, in *Marsee v. United*
7  *States Tobacco Co.*,[16] the trial court excluded a chart from evidence under Rule 403 on
8  the basis that it was cumulative and repetitive of other evidence. The appellate court
9  affirmed that ruling, indicating:

> "The trial court excluded the chart from evidence under Fed. R. Evid. 403. It held
> that the chart had the potential to mislead the jury and that it was cumulative of
> other evidence that had been admitted. Without commenting on the chart's
> potential to mislead, the record demonstrates that the chart was cumulative and
> repetitive. The information contained in the excluded exhibit was in fact received
> into evidence. One of plaintiff's experts, Dr. Hecht, whose videotaped deposition
> was shown to the jury, described the chart and testified at length and in detail
> about the information contained in the chart. Dr. Lijinski, another of plaintiff's
> experts, also testified about the information contained in the chart and commented
> that the comparison depicted by the chart was useful.
>
> Error may not be predicated upon the exclusion of cumulative evidence. [citation].
> The facts reflected in the chart were explained to the jury in detail. Thus, its
> exclusion did not prejudicially affect any substantial right of plaintiff."[17]

---

[15]So much is required by Fed. R. Civ. P. 26. Each party must "disclose to the other
parties the identity of any witness it may use at trial to present" expert testimony. Fed.
R. Civ. P. 26(a)(2)(A). This "disclosure must be accompanied by a written
report-prepared and signed by the witness – if the witness is one retained or
specifically employed to provide expert testimony." Fed. R. Civ. P. 26(a)(2)(B).
Failure to comply with Rule 26 precludes a party from using at trial expert testimony
that was not timely or fully disclosed. Fed. R. Civ. P. 37(c)(1).

[16]866 F.2d 319 (10th Cir. 1989).

[17]*Marsee v. United States Tobacco Co.*, *supra*, 866 F.2d at 324.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CALUORI'S IN LIMINE
MOTION NO. 2, I.E, TO PRECLUDE ONE OF OWT'S "EXPERTS,"i.e., MICHAEL GILLILAND,
FROM REPEATING THE OPINIONS PREPARED BY OWT EXPERT PAUL WRIGHT

8

ADLER LAW GROUP
350 So. Figueroa St., Suite 557
Los Angeles, California 90071

ADLER LAW GROUP
350 So. Figueroa St., Suite 557
Los Angeles, California 90071

In the case at bar, Wright is similarly capable to explaining his observations and conclusions to the jury. Thus, Gilliland's testimony would be unnecessarily cumulative and repetitive.

Another court, addressed a variation on this theme: different experts relied on reports prepared by third parties, i.e., ChemRisk and the Risk Assessment Corporation, to formulate their own opinions. In sum, the court rejected the defendant's attempt to offer a repetitive series of opinions through different experts who were basing their opinions on that single body of facts, holding:

> "Studies conducted by ChemRisk and the Risk Assessment Corporation ('RAC') regarding the Rocky Flats plant are among the scientific studies discussed and relied upon in the expert disclosures of at least four of Defendants' expert witnesses: Drs. John Till, Chris Whipple, John Auxier and John Frazier. Plaintiffs move to limit these experts' testimony with respect to the ChemRisk and RAC studies on the ground that repeated presentation of these studies through multiple experts would be prejudicial, needlessly cumulative and a waste of trial time. In further briefing on this motion, Plaintiffs clarified that they do not object to Defendants' experts relying on the ChemRisk and RAC study results in reaching their conclusions, but rather seek to prevent repetitive presentations of the study reports themselves. [citation] [¶] This motion is granted."[18]

In the case at bar, the issue is even plainer. OWT seeks to proffer two experts to present the *same* analysis, the *same* supporting material and the *same* conclusions.

Similarly, even without a common report, the courts applied Rule 403 to exclude such cumulative and repetitive testimony. Thus, for example, the court in *Highland Capital Mgmt., L.P. v. Schneider*,[19] addressed the effort of a securities firm to have various of its officers and directors testify. It designated its officers and directors as experts to provide virtually identical expert opinion evidence on various customs and practices in buying securities including such issues as whether certain notes constituted

---

[18]*Cook v. Rockwell Int'l Corp.*, 580 F. Supp.2d 1071, 1173 (D. Colo. 2006)

[19]551 F. Supp. 2d 173, 181-184 (S.D.N.Y. 2008)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CALUORI'S IN LIMINE MOTION NO. 2, I.E, TO PRECLUDE ONE OF OWT'S "EXPERTS,"i.e., MICHAEL GILLILAND, FROM REPEATING THE OPINIONS PREPARED BY OWT EXPERT PAUL WRIGHT

9

ADLER LAW GROUP
350 So. Figueroa St., Suite 557
Los Angeles, California 90071

1   "securities."   While the court accepted these individuals were experts, it barred them

2   from providing such cumulative, repetitive opinion testimony, explaining:

> "Rule 403 of the Federal Rules of Evidence provides that '[a]lthough relevant,
> evidence may be excluded if its probative value is substantially outweighed by the
> . . . considerations of undue delay waste of time, or needless presentation of
> cumulative evidence.' Fed. R. Evid. 403; see also *Int'l Minerals & Res., S.A. v.
> Pappas*, 96 F.3d 586, 596 (2d Cir. 1996) ('A district judge has discretion to
> exclude evidence if it is cumulative of evidence already in the record.'); *United
> States v. Holmes*, 44 F.3d 1150, 1157 (2d Cir. 1995) ('Absent a clear abuse of
> discretion, a trial judge retains a wide latitude to exclude irrelevant, repetitive, or
> cumulative evidence.'); *Rezulin*, 309 F. Supp. 2d at 550. The proffered testimony
> of Dondero, Okada, Underwood, Rich, Wood, Ambrecht, and Parent is needlessly
> cumulative. Any admissible opinion testimony that they would offer could be
> addressed by either Duval or Guild.   See *F.H. Krear & Co. v. Nineteen Named
> Trs.*, 810 F.2d 1250, 1258 (2d Cir. 1987) (affirming district court's exclusion of
> expert testimony as cumulative where at least four other witnesses testified on the
> same subject). It is unnecessary and would be a waste of time for all of these
> experts to opine on the same subjects.   Therefore, Highland is precluded from
> offering expert testimony from Dondero, Okada, Underwood, Rich, Wood,
> Ambrecht, and Parent."[20]

In short, the court held that the testimony of two officers as to the various issues would

suffice.   Testimony  from other officers would be unnecessarily cumulative.

In sum, Rule 403 renders OWT's effort to introduce identical expert testimony

nugatory. Under that rule, the trial court is authorized to reject such a blatantly improper

activity. As a result, the courts – to implement that rule – have precluded similar efforts

by other litigants to introduce similar duplicative testimony even where those were more

roundabout  than  OWT.[21]    As  a  result,  this  court  should  preclude  Gilliland  from

---

[20]*Id.,* at 184.

[21]See e.g., *Froemming v. Gate City Federal Sav. & Loan Asso.*, 822 F.2d 723, 732
(8th Cir. 1987) (approving exclusion of expert testimony; "Stigen's testimony would
have been cumulative of the testimony of Darrell Rasmuson, another expert called by
the North Dakota partners, who valued the mall at $13,500,000."); *Gibson v. Mohawk
Rubber Co.*, 695 F.2d 1093, 1101 (8th Cir. 1982) (approving exclusion of witnesses
whose testimony was cumulative to that of expert proffering opinion to jury; " The
foregoing evidence was essentially the type of information that Mohawk hoped to
elicit from [the additional experts] Barney and Austin to rebut Gibson's charge that

1  duplicating the testimony of Wright.

2

3       B.    *Gilliland, since he did not "prepare" either the initial report or the*
4             *rebuttal report, is precluded from testifying*

5       Wright unequivocally testified he prepared the initial report and rebuttal reports
6  by himself. He also testified he prepared his reports based on the conclusions he reached
7  after investigating the Caluori device, the '727 patent and the OWT device. Thereafter,
8  he failed to change his deposition testimony on those issues. And OWT's counsel failed
9  to indicate at Wright's deposition or thereafter that he had been anything but truthful.

10      Based on Wright's testimony and the plain language of Rule 26 requiring experts
11 to "prepare" their own reports, Caluori's counsel saw no basis to depose Gilliland.
12 Initially, Gilliland's testimony would be identical to Wright's. Further, Gilliland had not
13 "prepared" the Rule 26 expert report which would enable him to testify. And Gilliland,
14 since he merely copied both of Wright's reports, failed to develop any of the opinions
15 expressed in either reports. As noted above, Gilliland's copying was evident since his
16 copy of these reports (except for signature and CV) was identical to Wright's, including
17 Wright's typographical errors.

18      The "meet and confer" triggered by Caluori's imminent filing of this motion
19 caused OWT's counsel to raise a new concept: counsel had prepared the entirety of both
20 reports. Further, the initial report was "really" the work of Wright and, regardless of
21 Wright's testimony, the rebuttal report was "really" the work of Gilliland. Counsel,
22 however, failed to explain obvious gaps in their theorizing:

23

24 the company regularly discharged employees just before they reached retirement age
25 in order to save money. Fed. R. Evid. 403 expressly permits testimony to be excluded
   if the district court concludes it would be a "needless presentation of cumulative
26 evidence.' "); *In re Trailer*, 2010 U.S. Dist. LEXIS 55592, 2-3 (E.D. La. May 12,
27 2010) (Again, the Court warns that duplicative opinions stated by multiple experts
   will not be permitted by either party and will result in admonishment before the jury,
28 and exclusion of any such duplicative opinions.")

ADLER LAW GROUP
350 So. Figueroa St., Suite 557
Los Angeles, California 90071

ADLER LAW GROUP
350 So. Figueroa St., Suite 557
Los Angeles, California 90071

- Wright had unequivocally testified he prepared both reports in their totality. Despite numerous breaks and various conferences between Wright and OWT's counsel, Wright never changed his testimony during the deposition.

- As officers of the court, if counsel knew their witness was perjuring himself, they would have been obliged to correct Wright or otherwise rectify the situation. Counsel, however, did nothing.

- Wright, after concluding his deposition, had further time to discuss his testimony with OWT's counsel and note any changes on the deposition transcript. He, however, never changed that testimony.

Rule 26 precludes Gilliland from testifying as to opinions expressed in a report "prepared" by another. That is so because an expert to "prepare" his own report even if he receives some assistance from counsel. Rule 26(a)(2)(B) provides in relevant part:

> "(B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report – *prepared and signed by the witness* – if the witness is one retained or specially employed to provide expert testimony in the case . . ."

As one court summarized, attorneys cannot, in conformity with Rule 26, simply prepare a report for the expert witnesses to sign in the manner described by OWT's counsel:

> "Fed. R. Civ. P. 26 and *Trigon Ins. Co. v. U.S.* provide that an expert witness must prepare his own Rule 26 Report. 204 F.R.D. 277, 291 (E.D. Va. 2001). Specifically, it is improper for counsel to prepare the expert's opinion from 'whole cloth,' and then have the expert sign the drafted report as his own. *Id*. at 293."[22]

And assuming Wright did not perjure himself, the referenced decision, *Trigon*, also highlights Gillaland's impropriety in merely signing a copy the report Wright prepared. As the court explained, the expert is responsible for preparing the report even if he obtains counsel's assistance.

> Unquestionably, Rule 26 requires an expert witness to prepare his own Rule 26 Report. The Advisory Committee Notes accompanying this rule clarify the intended meaning of the phrase 'prepared and signed by the witness', explaining

---

[22] *Minn. Lawyers Mut. Ins. Co. v. Batzli*, 2010 U.S. Dist. LEXIS 14487 (E.D. Va. 2010).

ADLER LAW GROUP
350 So. Figueroa St., Suite 557
Los Angeles, California 90071

that a report can be 'prepared' by an expert witness even if counsel has aided the witness in preparing an expert's report. Specifically, the Advisory Committee Notes provide that:

> Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, with experts such as automobile mechanics, this assistance may be needed. Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness."[23]

As highlighted by one of the leading decisions followed in *Trigon*, if multiple experts utilize the same report, counsel has overstepped his role. In *Jackson Nat'l Life Ins. Co. Premium Litig.*,[24] the court found three expert reports in three different cases to have "substantial similarities" in language and conclusions. The first report was signed by one actuarial experts, but another expert signed the other two reports. The Magistrate Judge found "the substantial similarity among the three expert witness reports derived from the authorship of their common language by plaintiffs' counsel." On that basis, the Magistrate Judge held the report had not been "prepared by" the expert within the meaning of Rule 26(a)(2) and that, thus, concluded the report should be stricken under Rule 37(c)(1). On review, the district court affirmed, stating:

> " The record clearly supports the finding that the language of Mr. Bieluch's report, including the formulation of his opinions, was not prepared by him, but was provided to him by plaintiffs' counsel. Granted, Rule 26(a)(2) contemplates some assistance of counsel in the preparation of an expert's report. See *Marek v. Moore*, 171 F.R.D. 298 (D. Kan. 1997). However, undeniable substantial similarities between Mr. Bieluch's report and the report of another expert prepared with assistance from the same counsel in an unrelated case, demonstrate that counsel's participation so exceeded the bounds of legitimate 'assistance' as to negate the possibility that Mr. Bieluch actually prepared his own report within the meaning of Rule 26(a)(2). Plaintiffs' failure to furnish defendant with a report prepared by Mr. Bieluch constitutes a violation of Rule 26(a)(2). [ciation]"

As used in Rule 26, the term "preparation" is straightforward. As explained in *Manning v. Crockett*, "preparation implies involvement other than perusing a report

---

[23] *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 291-292 (E.D. Va. 2001)

[24] 1999 U.S. Dist. LEXIS 17153 (W.D. Mich. 1999).

1  drafted by someone else and signing one's name at the bottom to signify agreement . . .
2  Allowing an expert to sign a report drafted entirely by counsel without prior substantive
3  input from an expert would read the word 'prepared' completely out of the rule."[25]

4      Plainly, there is no basis to assume Wright was untruthful in explaining he had
5  prepared the entirety of both reports. Equally plainly, based on Wright's testimony and
6  the undeniable fact Gilliland's copies of Wright's reports have the same typographical
7  errors, Gilliland could not have "prepared" that report as required by Rule 26.

8      Following the decisions in *Jackson Nat'l Life* and *Manning*, the court in *Bekaert*
9  *Corp. v. City of Dyersburg* concluded it was obliged to "determine if Mr. Hynes
10  substantially participated in the preparation of his declaration [as an expert]."[26] Apropos
11  of the case at bar where Gilliland merely signed a copy of the report Wright prepared
12  (including typos), the court excluded the expert declaration of Mr. Hynes:

13      "Here the Court is presented with evidence that Mr. Hynes' report was originally
        prepared by Defendant's counsel. When questioned about this, Mr. Hynes could
14      not actually point to any portion of the declaration, which could be said to have
        been his testimony. As such, the present set of facts is more akin to the situation
15      in which testimony was wholly prepared by counsel with Mr. Hynes participation
16      amounting to his signature after reviewing the document. Therefore, as Defendant
        has failed to offer any showing of justification or harmlessness, Rule 37©
17      mandates that Mr. Hynes testimony must be excluded."[27]

18  In short, although Rule 26 explicitly requires an expert to prepare the report, Gilliland
19  merely signed the initial report and rebuttal report prepared by Wright. As Wright
20  testified, those reports incorporate his (not Gilliland's) observations, conclusions and
21  opinions. Since Gillaland, contrary to Rule 26, failed to "prepare" the reports he signed,
22  this court should exclude his testimony under Rule 37.

23

24  _____

25  [25]*Manning v. Crockett*, 1999 U.S. Dist. LEXIS 7966, No. 95-C3117, 1999 WL
    342715, at *3 (N.D. Ill. 1999).

26

27  [26]256 F.R.D. 573, 579 (W.D. Tenn. 2009).

28  [27]*Id.*

ADLER LAW GROUP
350 So. Figueroa St., Suite 557
Los Angeles, California 90071

1    IV.   **CONCLUSION**

2           For the reasons stated above, the testimony of Michael Gilliland should be

3    excluded.

4    Dated: April 16, 2012                                    ADLER LAW GROUP

5                                                                    /s/

6                                                        _____
7                                                             Erwin E. Adler,
                                                        Attorneys for Raymond Caluori

ADLER LAW GROUP
350 So. Figueroa St., Suite 557
Los Angeles, California 90071

1

# TABLE OF CONTENTS

I.     **PRELIMINARY STATEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.    **FACTUAL STATEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

III.   **LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

     A.   *No litigant, including OWT, has the right to present duplicative testimony in support of its position* . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

     B.   *Gilliland, since he did not "prepare" either the initial report or the rebuttal report, is precluded from testifying* . . . . . . . . . . . . .  11

IV.   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

ADLER LAW GROUP
350 So. Figueroa St., Suite 557
Los Angeles, California 90071

# TABLE OF AUTHORITIES

*Bekaert Corp. v. City of Dyersburg*, 256, F.R.D. 573 (W.D. Tenn. 2009) . . . . . . . . . . . . . 14

*Cook v. Rockwell International Corp.*, 580 F.Supp.2d 1071 (D. Colo. 2006) . . . . . . 9

*Froemming v. Gate City Federal Sav. & Loan Association,*
      822 F.2d 723 (8th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093 (8th Cir. 1982) . . . . . . . . . . . . . . . 10

*Highland Capital Management, L.P. v. Schneider,*
      551 F.Supp.2d 173 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Insurance Co. v. United States*, 204 F.R.D. 277 . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Jackson National Life Insurance Co. Premium Litigation,*
      1999 U.S.Dist. LEXIS 17153 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Manning v. Crockett*, 1999 U.S.Dist. LEXIS 7966, 1999 WL 342715 . . . . . . . . . . 14

*Marsee v. United States Tobacco Co.*, 866 F.2d 319 . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States Tobacco Co.*, *supra*, 866 F.2d at 324 . . . . . . . . . . . . . . . . . . . . . . . . 8

*Minn. Lawyers Mutual Insurance Co. v. Batzli*, 2010 U.S.Dist. LEXIS 14487 . . . . 12

*Secretary of N.M. Department of Corrections*, 50 F.3d 801 . . . . . . . . . . . . . . . . . . 7

*In re Trailer*, 2010 U.S.Dist. LEXIS 55592 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*White v. W.G.M. Safety Corp.*, 1988 U.S.Dist. LEXIS 14293 . . . . . . . . . . . . . . . . . 7

## FEDERAL STATUTES

Fed. R. Civ. P. 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 26(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 26(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 37(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Evid. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

ADLER LAW GROUP
350 So. Figueroa St., Suite 557
Los Angeles, California 90071

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ADLER LAW GROUP
350 So. Figueroa St., Suite 557
Los Angeles, California 90071