1  J. DONALD BEST (SBN 146984)
   jdbest@michaelbest.com
2  MICHAEL BEST & FRIEDRICH LLP
   One South Pinckney Street, Suite 700
3  Madison, WI 53703
   Telephone: (608) 257-3501
4  Facsimile: (608) 283-2275

5  RICHARD H. MARSCHALL (*pro hac vice*)
   rhmarschall@michaelbest.com
6  S. EDWARD SARSKAS (*pro hac vice*)
   sesarskas@michaelbest.com
7  MELANIE J. REICHENBERGER (*pro hac vice*)
   mjreichenberger@michaelbest.com
8  MICHAEL BEST & FRIEDRICH LLP
   100 East Wisconsin Avenue, Suite 3300
9  Milwaukee, WI 53202
   Telephone: (414) 271-6560
10 Facsimile: (414) 277-0656

11 KARIN G. PAGNANELLI (SBN 174763)
   kgp@msk.com
12 MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
13 Los Angeles, CA 90064-1683
   Telephone: (310) 312-2000
14 Facsimile: (310) 312-3100

15 Attorneys for Defendant and Counterclaimant
   ONE WORLD TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND CALUORI, <br><br> Plaintiff, <br> v. <br><br> ONE WORLD TECHNOLOGIES, INC., <br><br> Defendant. <br><br> AND RELATED COUNTERCLAIMS | CASE NO. CV07-2035 CAS (VBKx) <br><br> Honorable Christina A. Snyder <br><br> **DEFENDANT ONE WORLD TECHNOLOGIES, INC.'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1 (TO EXCLUDE EVIDENCE REGARDING FTC INVESTIGATION AS TO CALUORI'S CREDIT REPAIR SERVICE)** <br><br> Date: May 14, 2012 <br> Time: 11:00 a.m. <br> Ctrm.: 5 – 2nd Floor <br> Trial: June 5, 2012 |

## I. Introduction

There are three fundamental flaws with Plaintiff's motion in limine to exclude evidence regarding the investigation of the Federal Trade Commission ("FTC") and the Commonwealth of Massachusetts into Plaintiff's credit repair business, New England Financial. First, Plaintiff inaccurately suggests that the only issue in the case is whether One World Technologies, Inc. ("One World") infringes U.S. Patent No. 6,915,727 ("the '727 patent")[1] and then leaps to the conclusion that Plaintiff's prior fraudulent behavior is irrelevant. Plaintiff completely ignores the fact that evidence of prior fraud allegations is always relevant to the credibility and truthfulness of a witness. And in this case, Plaintiff's credibility plays an especially critical role in the invalidity and inequitable conduct claims raised by One World, issues Plaintiff never even acknowledges in his motion. Second, Plaintiff applies the wrong law, spending the bulk of his brief addressing criminal cases applying Rule 404(b) and suggesting that a criminal conviction is necessary to even raise the prior fraud issues. One World does not intend to contravene Rule 404(b). Rather, One World intends to (1) cross-examine Plaintiff pursuant to Rule 608(b) regarding the prior fraud allegations because they are probative of his character for truthfulness and (2) introduce the FTC Complaint and Stipulated Final Judgment into evidence pursuant to Rule 607 if it becomes necessary to impeach by contradiction Plaintiff's testimony at trial. Third, Plaintiff incorrectly presumes that if the prior fraud allegations are relevant they are of limited probative value and therefore

---

[1] If there were any doubt about whether Plaintiff intends to accuse One World of copying Plaintiff's invention at trial, Plaintiff's present motion removes all doubt. (Dkt. No. 193-1 at 1 ("OWT *copied* the idea Plaintiff developed in December 1999 . . . to prevent the flexing which later became the basis for his '727 patent.") (emphasis added).) However, copying presumes prior knowledge of the claimed invention. *See Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1520 (Fed. Cir. 1995) ("Without knowledge, the independent developer could not have set out to make its product or process either similar to or different from the claimed invention."). As explained in One World's Motion in Limine No. 1, Plaintiff has absolutely no evidence of any copying by One World in this case. (*See* Dkt. No. 186.)

1

incorrectly concludes that the probative value any evidence of those allegations is substantially outweighed by the danger of unfair prejudice.

The prior fraud allegations regarding Plaintiff's credit repair business are highly probative of his character for truthfulness.  As such, evidence of those allegations will not be *substantially* outweighed by any speculative unfair prejudice to Plaintiff.  One World should be permitted to cross-examine Plaintiff on this topic under Rule 608(b).  Further, if Plaintiff were to unequivocally volunteer false testimony regarding his credit repair business (as he has already done in his deposition) at trial, the FTC Complaint and Stipulated Final Judgment may become properly admissible under Rule 607, which states that "[a]ny party . . . may attack [a] witness's credibility."  In sum, Plaintiff's motion should be denied.

## II. Plaintiff Ignores The High Probative Value Of The Prior Fraud Allegations.

In challenging the relevancy of the prior fraud allegations regarding Plaintiff's credit repair business, Plaintiff resorts to the ostrich-like tactic of pretending that One World's invalidity and inequitable conduct claims do not exist.  The invalidity and inequitable conduct claims, however, comprise a substantial portion of this action.  Indeed, during the April 10, 2012 conference of counsel, Plaintiff's counsel indicated that he intended to call Plaintiff to testify at trial and examine him for as many as six hours, presumably covering topics directly related to the invalidity and inequitable conduct claims.  The prior fraud allegations regarding Plaintiff's credit repair business are relevant because Plaintiff will be putting his credibility in issue as to any topic on which he testifies, including topics related to One World's invalidity and inequitable conduct claims.

Evidence is relevant if it has *any* tendency to make the existence of *any* fact that is of consequence to the determination of the action more or less probable.  Fed. R. Evid. 401.  When a party takes the witness stand to testify at trial, the party "place[s] his credibility in issue." *United States v. Reid*, 634 F.2d 469, 473 (9th

1  Cir. 1980).  As the Ninth Circuit has repeatedly recognized, "[e]vidence of prior
2  frauds is considered probative of the witness's character for truthfulness or
3  untruthfulness." *United States v. Oriyomi*, 449 Fed. Appx. 681, 682 (9th Cir.
4  2011) (quoting *United States v. Gay*, 967 F.2d 322, 328 (9th Cir. 1992)); *see also*
5  *United States v. Jackson*, 882 F.2d 1444, 1446 (9th Cir. 1989) ("evidence of a
6  witness' participation in fraudulent transactions is probative of truthfulness").
7  Because Plaintiff will be called to testify at trial, evidence of the prior fraud
8  allegations regarding Plaintiff's credit repair business will be relevant.

9      Plaintiff's contrarian assertion that "a cursory review" of the FTC Complaint
10 and Stipulated Final Judgment demonstrates that they are irrelevant is belied by a
11 more thorough inspection of those documents.  Reading Plaintiff's brief leaves the
12 impression that Plaintiff did nothing wrong and was the subject of an overly-
13 aggressive government sting operation.  However, as explained in the FTC
14 Complaint, Plaintiff was fraudulently representing to consumers that he could
15 substantially improve their credit reports by removing negative information from
16 those reports, even where such information was accurate and not obsolete.  (Dkt.
17 No. 193-2, Ex. A ¶¶ 20, 25.)  The FTC Complaint provided details from the
18 investigation of Plaintiff's fraudulent activities by providing examples of
19 Plaintiff's tactics with consumers:

20     a.  "CREDIT REPORTS CLEARED LEGALLY, No Matter What The Problem!  Bankruptcy, Foreclosures, Tax Liens, Judgments, Repossessions, Collections, Late Pays, Turn Downs, Charge Offs, Liens, Inquiries, Student Loans."

23     b.  [*Consumer: "Is it possible to get this stuff [a bankruptcy and a credit card default] off of our credit reports?"*]  "Oh, yeah, that's what we do."

25     c.  [*Consumer: "[May wife has] got a friend at work who keeps telling her that if the information on your credit report is accurate, that there's no way you're going to get it off."*]  "You can quote all the rules you want . . . but if that were the case we wouldn't need judges and attorneys if we just did what the law said, right?"

28     d.  [*Consumer: "What is it you guys do?"*]  "We clear people's credit reports up.  We do what everybody says you can't do."

3

(*Id.* ¶ 11.)  The FTC and Commonwealth of Massachusetts found these representations to be factually untrue and obtained a temporary restraining order enjoining Plaintiff from making such further representations and freezing his company's assets.  (*Id.* ¶¶ 21, 26; Dkt. No. 193-2, Ex. B ¶ 3, § VI.)

Ultimately, although Plaintiff did not admit that he violated any laws, Plaintiff agreed to the entry of a final judgment that, as Plaintiff acknowledges, effectively required him "to close his business." (Dkt. No. 193-2 ¶ 4.)  Pursuant to the Stipulated Final Judgment, Plaintiff was ordered to pay $5,000.00 to the Commonwealth of Massachusetts for "consumer redress" and further enjoined from "[m]isrepresenting that [he] could improve substantially consumers' credit reports or profiles by permanently removing bankruptcies, liens, judgments, charge-off, late payments, foreclosures, repossessions, and other negative information from consumers' credit reports." (Dkt. No. 193-2, Ex. B §§ I, IV.) This evidence could not be any more probative of Plaintiff's character for truthfulness.

Plaintiff's character for truthfulness is particularly important in this action. For instance, it will be critical to One World's invalidity claims as a result of Plaintiff's constantly shifting contentions regarding his date of conception.  As explained in One World's Motion in Limine No. 8, Plaintiff's testimony regarding his date of conception has been anything but forthright.  During his first deposition, Plaintiff testified that he conceived of the BladePoint device that embodied his '727 patent in the summer of 2001.  (Dkt. No. 135-1, Ex. 2 at 110:9-15, 111:1-4.) Next, in his original response to One World's Interrogatory No. 3, Plaintiff stated that in the summer of 2000 he solely conceived of and reduced to practice the invention of claim 1.  (Dkt. No. 135-7, Ex. 19.)  Then, just before the close of discovery, after nearly four years of litigation, Plaintiff allegedly "found" a prototype that he allegedly developed in December 1999, which subsequently became Plaintiff's *third different contention of a date of conception*.  (Dkt. No.

4

135-1, Ex. 1.)  In effect, Plaintiff has shifted his alleged date of conception backwards from 2001 to 2000 to 1999 in an effort to pre-date One World's own invention and stave off One World's invalidity case.  Moreover, Plaintiff has since refused to allow One World to submit the alleged prototype to an independent laboratory for testing and inspection so that One World could assess the accuracy of Plaintiff's most recent priority contentions.  (Dkt. No. 146-1 ¶¶ 4-8.)  Clearly, Plaintiff's character for truthfulness will be crucial to the issue of whether Plaintiff's testimonial assertions regarding his suspiciously late-produced prototype entitle him to priority over One World's prior invention.

Plaintiff's character for truthfulness will also be directly implicated by his testimony concerning his inequitable conduct in connection with the prosecution of the '727 patent before the Patent Office.  One World's claims of inequitable conduct are based on evidence of Plaintiff's intentional failure to name the correct inventors, disclose invalidating prior sales and uses, and disclose highly material prior printed publications during the prosecution of the '727 patent and others, such as U.S. Patent No. D492,951 ("the '951 patent").  Specifically, with respect to the '951 patent, Plaintiff failed to disclose:

1. The substantial contributions of Plaintiff's former business partner, James Baird, to the conception of the "invention" claimed in the '951 patent;
2. Plaintiff's original BladePoint product sold at least as early as February 2000, which was covered by the '951 patent filed more than one year later; and
3. Several of the prior art references cited in Plaintiff's prior utility patent, U.S. 6,035,757 ("the '757 patent), which also covered Plaintiff's original BladePoint product, and the '727 patent, which was co-pending at the time.

(Dkt. No. 89 ¶¶ 15-23.)  With respect to the '727 patent, Plaintiff's omissions go even further, including a failure to disclose:

5

1. The substantial contributions of Mr. Baird to the conception of the "inventions" claimed in the '727 patent;
2. The substantial contributions of Plaintiff's consultant, Carlos Barberis, to the conception of the "invention" claimed in at least claim 17 of the '727 patent;
3. The substantial contributions of Plaintiff's consultant, John Sandor, to the conception of the "invention" claimed in at least claim 1 of the '727 patent;
4. The substantial contributions of Plaintiff's consultant, Richard Albrecht, to the conception of the "invention" claimed in at least claim 34 of the '727 patent;
5. Plaintiff's original BladePoint product sold at least as early as February 2000, which was covered by at least claim 17 of the '727 patent filed more than one year later;
6. Several prior art references disclosing adjustable lasers and the use of heat conductive epoxy and/or heat sinks in connection with laser devices, which are highly material to the patentability of at least claim 17 and/or claim 34 of the '727 patent;
7. Several prior art references cited in the '757 patent, which cover subject matter closely related to the '727 patent.

(*Id.* ¶¶ 26-55.)  Plaintiff's character for truthfulness will be critical in the evaluation of Plaintiff's attempts to explain away these blatant and intentional omissions and his pattern of misconduct before the Patent Office.

Because Plaintiff will be testifying at trial and the prior fraud allegations involving his credit repair business are probative of his character for truthfulness, evidence regarding those allegations will be relevant to any topic on which he testifies, including topics related to One World's invalidity and inequitable conduct claims.  And given the critical nature of the truthfulness of Plaintiff's testimony regarding One World's invalidity and inequitable conduct claims, the probative

6

value is unquestionably high.  Accordingly, evidence of the prior fraud allegations involving Plaintiff's credit repair business should not be excluded under Rule 401.

### III. Rule 404(b) Is Not A Proper Basis For Excluding Evidence Of The Prior Fraud Allegations.

In addition to making a misguided relevancy argument, Plaintiff spends a significant portion of his brief arguing that evidence of Plaintiff's past fraudulent behavior in connection with his credit repair business, even if relevant, constitutes inadmissible character evidence under Rule 404(b).  Plaintiff is applying the wrong law.  Rule 404(b) only prohibits the use of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  The rule expressly provides that such evidence "may be admissible for another purpose."  Fed. R. Evid. 404(b)(2).  For instance, Rule 608(b) expressly permits cross-examination into specific instances of a witness' prior conduct if they are probative of the witness' character for truthfulness or untruthfulness.  Fed. R. Evid. 608(b); *Gay*, 967 F.2d at 328.  As noted above, evidence of prior frauds is considered probative of the witness's character for truthfulness.  *Oriyomi*, 449 Fed. Appx. at 682; *Gay*, 967 F.2d at 328; *Jackson*, 882 F.2d at 1446.  A criminal conviction for fraud is not required, as Plaintiff suggests.  *United States v. Osazuwa*, 564 F.3d 1169, 1175 (9th Cir. 2009).  Thus, the prior fraud allegations involving Plaintiff and his credit repair business may be properly inquired about on cross-examination.

Moreover, the FTC Complaint and the Stipulated Final Judgment themselves may be admissible under Rule 607.  Rule 607 states that "[a]ny party . . . may attack [a] witness's credibility."  Fed. R. Evid. 607.  And although Rule 608(b) generally precludes the admission of extrinsic evidence to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness, the Ninth Circuit has held that Rule 608(b) does not preclude the

7

1  admission of extrinsic evidence offered for purposes of impeaching a witness's
2  testimony by contradiction. *United States v. Kincaid-Chauncey*, 556 F.3d 923, 932
3  n.8 (9th Cir. 2009); *United States v. Castillo*, 181 F.3d 1129, 1132 (9th Cir. 1999).
4  The admission of such evidence should be allowed under Rule 607 where the
5  testimony sought to be contradicted has been truly volunteered by the witness.
6  *Kincaid-Chauncey*, 556 F.3d at 932-33; *Castillo*, 181 F.3d at 1134 n.1.

      The FTC Complaint and the Stipulated Final Judgment will likely become admissible under Rule 607 to impeach Plaintiff's testimony at trial. Indeed, during One World's deposition of Plaintiff, Plaintiff attempted to conceal from One World the true nature of New England Financial (his credit repair business):

> Q. What's the next job you remember after the coffee sales job?
>
> A. I started a business as a -- call it New England Financial. We did mortgages, helped people get mortgages.
>
> . . .
>
> Q. How did you help people get mortgages?
>
> A. I was a broker.
>
> Q. Why did that business end in 1998?
>
> A. I didn't renew my broker's license.
>
> Q. And did you consider that business at New England Financial to be a successful business?
>
> A. Um-hum.
>
> Q. We need an audible response for the record.
>
> A. Yes, I'm sorry. Yes, I did.

(Albridge Decl.,[2] Ex. 1 [Caluori 6/24/10 Dep.] at 17:5-18:9.) This testimony was unequivocally false. As the FTC Complaint and Stipulated Final Judgment demonstrate, New England Financial was not a mortgage company; it was a "credit repair business." (Dkt. No. 193-2 ¶ 2, Exs. A, B.) Moreover, the business was not successful and it did not end in 1998 because Plaintiff didn't renew his broker's

---

[2] Declaration of Kenneth M. Albridge III, filed concurrently herewith.

license; the business was the subject of a government sting operation in 1998 that resulted in a final judgment being entered against Plaintiff effectively requiring him to "close [his] business." (Dkt. No. 193-2 ¶ 4, Exs. A, B.)  One World should be permitted to introduce the FTC Complaint and Stipulated Final Judgment to impeach Plaintiff's testimony by contradiction under Rule 607.

### IV. The High Probative Value Of Prior Fraud Allegations Are Not Substantially Outweighed By Speculative Unfair Prejudice To Plaintiff.

Plaintiff's misguided relevancy argument leads to a flawed application of the Rule 403 balancing test.  Plaintiff's erroneous conclusion that the evidence of the prior fraud allegations should be excluded under Rule 403 as unfairly prejudicial derives from his incorrect presumption that if such evidence is relevant it is only of limited probative value.  As detailed above, the prior fraud allegations regarding Plaintiff's credit repair business are highly probative of Plaintiff's character for truthfulness and thus the credibility of his testimony regarding One World's invalidity and inequitable conduct claims.  This simple fact completely undermines Plaintiff's argument for exclusion under Rule 403.

Relevant evidence may only be excluded under Rule 403 if its "probative value is *substantially* outweighed by the danger of unfair prejudice." *Oriyomi*, 449 Fed. Appx. at 682 (quoting Fed. R. Evid. 403) (emphasis in original).  Rule 403 is not a panacea:

> Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403.  Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.

*United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000).  Because prior frauds are considered to be probative of a witness's truthfulness, as is the case here, Rule 403 will not operate to preclude cross-examination regarding such evidence. *Oriyomi*, 449 Fed. Appx. at 682.  The probative value is heightened here

1  because Plaintiff's credibility is central to the invalidity and inequitable conduct
2  issues in this case.
3         Moreover, if Plaintiff attempts to volunteer further unequivocal false
4  testimony regarding his credit repair business while on the stand at trial and that
5  testimony is directly contradicted by the FTC Complaint and Stipulated Final
6  Judgment, Rule 403 will not bar its admission into evidence.  *See Castillo*, 181
7  F.3d at 1134 ("[The] expansive and unequivocal denial of involvement with drugs
8  on direct examination warranted the district court's decision to admit extrinsic
9  evidence of the 1997 cocaine arrest as impeachment by contradiction."); *Kincaid-*
10 *Chauncey*, 556 F. 3d at 933 (acknowledging that the district court properly
11 exercised its discretion in admitting extrinsic evidence to impeach by contradiction
12 where testimony on cross-examination was unequivocal).  Indeed, the entire
13 purpose of allowing impeachment by contradiction is "to prevent witnesses from
14 engaging in perjury and then using the prohibition on collateral [evidence] to
15 conceal the perjury."  *Kincaid-Chauncey*, 556 F.3d at 932.
16        Because the probative value of the prior fraud allegations involving
17 Plaintiff's credit repair business is not *substantially* outweighed by the danger of
18 unfair prejudice, evidence of those allegations should not be excluded under Rule
19 403.

## V.     Conclusion.

21        Based on the foregoing, Plaintiff's motion in limine to exclude evidence
22 regarding the investigation of the FTC and the Commonwealth of Massachusetts
23 into Plaintiff's credit repair business should be denied.

DATED: April 23, 2012

**MICHAEL BEST & FRIEDRICH LLP**

By: /s/ Richard H. Marschall
    J. Donald Best
    Richard H. Marschall
    S. Edward Sarskas
    Melanie J. Reichenberger

- and -

**MITCHELL SILBERBERG & KNUPP LLP**

    Karin G. Pagnanelli

Attorneys for Defendant and Counterclaimant
ONE WORLD TECHNOLOGIES, INC.